THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FLYNARD MILLER, Defendant-Appellant.

First District (1st Division) No. 1—06—3461

Opinion filed August 3, 2009.—Modified on denial of rehearing August 31, 2009.

Patricia Unsinn and Therese Bissell, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Amy Watroba Kern, and Haley Peck, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

Following a bench trial, the defendant Flynard Miller was convicted of the shooting death of Charles Fowler and the wounding of Michael Casiel. He was sentenced to 47 years in the Illinois Department of Corrections on his first degree murder conviction. After his unsuccessful direct appeal, the defendant filed an action pursuant to the Post-Conviction Hearing Act, arguing that trial and appellate counsel rendered ineffective assistance. 725 ILCS 5/122—1 et seq. (West 2008). Only his claim as to counsel that represented him prior to trial is before us on appeal. As to his "pretrial counsel," the defendant claims his failure to inform him that his first degree murder charge carried a sentencing enhancement of at least 25 years deprived

him of effective assistance of counsel regarding his decision to reject the plea offer. Based on the allegations in his petition, a purported plea offer of 20 years was extended more than 2½ years before the defendant's bench trial. The circuit court rejected the petition, finding the allegations regarding pretrial counsel to be conclusory. Because we agreed with the circuit court's assessment of the petition's allegations, we affirmed the circuit court in our original decision filed August 3, 2009.[1]

## BACKGROUND

Following a bench trial in September 2003, the defendant was found guilty of the murder of Fowler and the attempted murder and aggravated battery with a firearm of Casiel. The defendant was indicted along with Joseph Eastling. The offenses arose after a physical bumping between the defendant and Fowler at the apartment of the mother of the defendant's child and Fowler's girlfriend.

After the bumping, Fowler left the apartment, returning in the company of three friends, including Casiel. When Fowler reentered the apartment, the defendant and Eastling drew their weapons and began firing at Fowler. Fowler ran out of the apartment and down the stairs to exit the building, behind his three friends, who were waiting for him in the hallway. All the while, the defendant was firing his weapon. Once outside, Fowler collapsed. The defendant continued to chase Casiel and another friend, while firing his weapon. Responding police officers observed the defendant chase and fire his weapon at Casiel and others. The defendant and Eastling were arrested near the apartment building; two weapons were also recovered. Neither Fowler nor any one of his friends was armed.

The defendant testified at trial, admitting to firing his weapon, but claimed self-defense. The defendant also claimed to have fired at Fowler only to scare him. He was sentenced to consecutive prison

---

[1]Without seeking leave of court to cite as additional authority *People v. Hodges*, 234 Ill. 2d 1 (2009), the defendant filed a petition for rehearing contending "The Court overlooked the Illinois Supreme Court's recent holding that summary dismissal is allowed only if a petition has no arguable basis either in law or in fact" to urge that a "rehearing must be granted." We did not overlook the *Hodges* opinion. Under *Hodges*, "frivolous or patently without merit" postconviction petitions are still subject to summary dismissal. *Hodges*, 234 Ill. 2d at 11-12. A "frivolous or patently without merit" postconviction petition is now defined as one without arguable basis either in law or in fact, rather than a petition that does not state a "gist" of a constitutional violation. *Hodges*, 234 Ill. 2d at 9. *Hodges* did not overrule any of the cases we cite in support of our decision.

terms of 22 years for murder, with an additional 25 years under the statutory sentencing enhancement for personally discharging a firearm that proximately caused death, followed by 6 years for attempted murder and 6 years for aggravated battery with a firearm.

On direct appeal, the defendant challenged his aggravated battery conviction, attacked the 25-year firearm sentencing enhancement, and claimed he was not properly admonished regarding his right to file a motion to reconsider his sentence. We affirmed the judgment of the circuit court, but ordered that the aggravated battery conviction and sentence be vacated because it was based on the same physical act as the attempted murder charge. *People v. Miller*, No. 1—04—0114 (2005) (unpublished order pursuant to Supreme Court Rule 23).

Thereafter, the defendant filed this *pro se* postconviction action alleging his pretrial attorney neglected to inform him that he was subject to a 25-year sentencing enhancement for discharging a firearm that proximately caused death, in the event he was found guilty. 730 ILCS 5/5—8—1(a)(1)(d)(iii) (West 2008). He attached his own affidavit that stated that he would have accepted the purported plea offer of 20 years' imprisonment from the State made in February 2001 had his pretrial attorney informed him of the sentencing enhancement. The defendant also attached a separate affidavit in which he stated that his pretrial attorney first agreed to sign an affidavit that he "prejudice[d]" him by failing to inform him that he was facing "25 years or up to a term of natural life" on the sentencing enhancement and "when the time came [for his pretrial attorney] to sign the affidavit, he refused." We note the defendant proceeded to a bench trial in September 2003, represented by counsel other than the pretrial attorney the defendant referenced in his affidavits. The defendant also attached an affidavit from his mother stating that she would have advised the defendant to take the plea offer had she known of the sentencing enhancement. According to this affidavit, the pretrial attorney informed the defendant's mother of a plea offer of 20 years from the State made in February 2001. The defendant's petition additionally claimed that his appellate counsel rendered ineffective assistance based on the failure to raise other, more meritorious issues. The claim of ineffective assistance as to appellate counsel is not before us.

In October 2006, the circuit court summarily dismissed the defendant's petition. The court found that the defendant's claim regarding the guilty plea offer was predicated on conclusory allegations. This appeal timely followed.

## ANALYSIS

In his single contention on appeal, the defendant contends his petition states a "gist" of a meritorious claim that he received ineffec-

tive assistance regarding his rejection of the State's purported plea offer of 20 years, made more than 2½ years before the defendant's bench trial in September 2003. He contends he would have accepted the 20-year plea offer had defense counsel informed him that he was subject to a minimum 25-year enhancement based on committing murder with a handgun, which meant he faced a minimum sentence of 45 years if he were found guilty of murder in the shooting death of Fowler. At the time of the purported plea offer in February 2001, the defendant was represented by counsel other than trial counsel.

"The Illinois Post-Conviction Hearing Act provides a mechanism by which criminal defendants can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both." *People v. Mahaffey*, 194 Ill. 2d 154, 170, 742 N.E.2d 251 (2000), citing 725 ILCS 5/122—1 (West 1994). The Act outlines a three-step procedure for addressing a defendant's postconviction petition. At the first stage, the petition's "well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063 (1998). If "the circuit court determines a *pro se* petition states the gist of a constitutional claim, the petition moves to the second stage, where counsel may be appointed if the petitioner so requests and is indigent." *People v. Richardson*, 382 Ill. App. 3d 248, 252, 888 N.E.2d 553 (2008), citing 725 ILCS 5/122—2.1(b), 122—4 (West 2004). If, however, the circuit court "determines the petition is frivolous or is patently without merit, it shall dismiss the petition." *People v. Rogers*, 197 Ill. 2d 216, 221, 756 N.E.2d 831 (2001), citing 725 ILCS 5/122—2.1(a)(2) (West 1998). A defendant must make a substantial showing of a constitutional violation at the second stage to merit a third-stage evidentiary hearing. *Richardson*, 382 Ill. App. 3d at 252. "A circuit court's determination regarding the sufficiency of the allegations contained in a postconviction petition [is] reviewed *de novo*." *People v. Mahaffey*, 194 Ill. 2d 154, 171, 742 N.E.2d 251 (2000).

To succeed on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and "this substandard performance caused prejudice." *People v. Golden*, 229 Ill. 2d 277, 283, 891 N.E.2d 860 (2008), citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To establish deficiency in counsel's performance, the defendant must demonstrate that it "was below an objective standard of reasonableness." *People v. Paleologos*, 345 Ill. App. 3d 700, 706, 803 N.E.2d 108 (2003). To establish prejudice, he must demonstrate a "reasonable probability that, but for counsel's deficient performance, the result of

the proceeding would have been different." *Paleologos*, 345 Ill. App. 3d at 706. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064 (1984).

## Pretrial Counsel

"[I]t has been well established that the right to effective assistance of counsel extends to the decision to reject a plea offer." *People v. Curry*, 178 Ill. 2d 509, 518, 687 N.E.2d 877 (1997). The defendant contends the *Curry* rule applies to his claim. In addition to *Curry*, the defendant cites *People v. Paleologos*, 345 Ill. App. 3d 700, 803 N.E.2d 108 (2003), as authority to support his claim that he has made the requisite "gist" showing.

In *Curry*, a direct appeal case, our supreme court addressed "whether, having received a plea offer from the State, defense counsel's deficient performance deprived defendant of his right to be reasonably informed as to the direct consequences of accepting or rejecting that offer." *Curry*, 178 Ill. 2d at 530. In *Curry*, the State offered to dismiss two of the three counts the defendant faced, with a recommended sentence of 4½ years' imprisonment on the remaining count. According to the defendant's motion to reconsider his sentence, the defendant claimed defense counsel represented that he faced concurrent sentences of approximately four years on each of the three counts after an unsuccessful trial. *Curry*, 178 Ill. 2d at 516. The defendant rejected the plea offer and proceeded to a jury trial. Following his conviction, the circuit court determined that the two counts of criminal sexual assault triggered mandatory consecutive sentences. The sentencing law also required that the sentence on the residential burglary charge be served after the consecutive sentences for the sex offenses. In its opinion, the supreme court noted that "[b]oth the State's Attorney and defense counsel indicated that they were unaware that consecutive sentences were mandatory for defendant's offenses." *Curry*, 178 Ill. 2d at 515. The trial court imposed a minimum sentence of 4 years on each of the three counts for an aggregate sentence of 12 years. *Curry*, 178 Ill. 2d at 516. In an affidavit attached to his motion to reconsider sentence, the defendant averred that had he known that consecutive sentences were mandatory, he would have accepted the State's plea offer. *Curry*, 178 Ill. 2d at 516.

In its analysis of the defendant's claim of ineffective assistance of counsel, the supreme court noted the broad constitutional principle: "A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or reject-

ing a plea offer." (Emphasis in original.) *Curry*, 178 Ill. 2d at 528. The court first determined that counsel being unaware that consecutive sentences were mandatory under the sentencing laws "was objectively unreasonable and fell outside 'the wide range of reasonable professional assistance.' " *Curry*, 178 Ill. 2d at 529, quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. The court determined that prejudice to the defendant flowed from counsel's deficient performance: the defendant, having "received a plea offer from the State, \*\*\* [was not] reasonably informed as to the direct consequences of accepting or rejecting that offer" where he was informed that after trial he faced approximately the same sentence. *Curry*, 178 Ill. 2d at 530. Where both deficient performance and prejudice were shown, the court concluded that the "defendant has established his claim of ineffective assistance of counsel." *Curry*, 178 Ill. 2d at 536. A new trial was ordered.

The court also noted the "unique circumstances of the case." *Curry*, 178 Ill. 2d at 530. The court expressly rejected the "[d]efendant's stipulated testimony \*\*\* that he would have accepted the plea offer if he had been told that consecutive sentences were mandatory" as sufficient to demonstrate prejudice: "[S]tanding alone, this testimony is 'subjective, self-serving, and \*\*\* insufficient to satisfy the *Strickland* requirement for prejudice.' " *Curry*, 178 Ill. 2d at 531, quoting *Turner v. State of Tennessee*, 858 F.2d 1201, 1206 (6th. Cir. 1988). Thus, essential to the finding of prejudice was defense counsel's affidavit attached to the defendant's motion to reconsider sentence, included in the record, which "provides independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice, and not, as the State suggests, upon other considerations." *Curry*, 178 Ill. 2d at 532. In addition, the court expressly noted that "the State did engage in plea bargaining with defendant." *Curry*, 178 Ill. 2d at 530.

In *Paleologos*, this court reversed the summary dismissal of a postconviction petition in which a *Curry*-type claim was alleged. In *Paleologos*, the defendant alleged that "his attorney told him that the maximum sentence he could serve was 30 years." *Paleologos*, 345 Ill. App. 3d at 705. He was, however, ultimately sentenced to 50 years' imprisonment. *Paleologos*, 345 Ill. App. 3d at 702. As in *Curry*, the defendant in *Paleologos* claimed that had he known he was subject to a maximum 60-year imprisonment as a result of consecutive sentencing, he would have accepted a 22-year plea offer. *Paleologos*, 345 Ill. App. 3d at 706. In finding a "gist" of a constitutional claim, we noted the defendant's "allegation is not rebutted by the record." *Paleologos*, 345 Ill. App. 3d at 706. We reversed the first-stage dismissal of the

defendant's petition, as the petition was "not frivolous or patently without merit." *Paleologos*, 345 Ill. App. 3d at 712.

We acknowledge that *Curry* and *Paleologos* appear to favor the defendant's claim here. However, on closer inspection, each case contains assertions not present in this case. The defendant in *Curry* "asserted that he rejected this offer because his attorney mistakenly advised him that he would face only concurrent sentences of approximately four years' imprisonment if he were convicted of any of the three charges." *Curry*, 178 Ill. 2d at 516. The defendant in *Paleologos* alleged that he went to trial because the offer he received was not much less than the maximum he faced if he were convicted. "Defendant alleged that since he thought he faced a maximum sentence of 30 years, which was only 8 years more than he was offered in return for a guilty plea, he decided to go to trial." *Paleologos*, 345 Ill. App. 3d at 705. In *Curry* and *Paleologos*, each defendant proceeded to trial because his trial attorney gave erroneous information about the maximum sentence each faced after trial. No allegation is made in the defendant's petition before us that defense counsel provided erroneous information at the time the defendant rejected the purported plea offer; nor did the defendant in this case receive a sentence in excess of the maximum of which he was informed.

Rather, as made clear at oral argument, the defendant seeks to rely on not being told that he faced a sentencing enhancement of 25 years for proximately causing the first degree murder of Fowler to explain his rejection of an offer to plead guilty and receive the minimum sentence of 20 years for first degree murder. The defendant does not deny that he was duly informed that he faced up to 60 years if convicted of first degree murder. Nonetheless, he contends had he been informed that he faced a minimum sentence of 45 years by his pretrial attorney, he would have accepted a plea offer of 20 years purportedly extended in February 2001.

The record establishes that his purported plea offer was extended within two months of his November 2000 arraignment on the charges. The defendant proceeded to a bench trial in September 2003, facing no less than 20 years and as many as 60 years as nonenhanced sentences on the first degree murder charge. The defendant does not claim that his pretrial attorney represented to him that he would receive approximately 20 years after a trial. He fails to explain why he rejected the minimum sentence he faced in February 2001, electing to proceed to trial and face the full sentencing range of 20 to 60, if he were convicted. Unlike *Curry* and *Paleologos*, the defendant makes no claim in his petition that his decision to proceed to trial was influenced by any "erroneous information" provided by his pretrial attorney.

Under the circumstances of this case, we perceive two underlying questions: (1) is the situation in this case analogous to the situations present in *Curry* and *Paleologos* and (2) is the petition, supported only by affidavits from the defendant and his mother, sufficient to establish a gist of ineffective assistance of counsel? We answer each question in the negative.

## *Curry* and *Paleologos* Distinguished

In *Curry* and *Paleologos*, central to the claims of ineffective assistance of counsel was the misinformation provided by each defense counsel, prompting each defendant to proceed to trial. *Curry*, 178 Ill. 2d at 516 (after trial, the defendant would face "concurrent sentences of approximately four years' imprisonment if he were convicted of any of the three charges"); *Paleologos*, 345 Ill. App. 3d at 705 (the maximum he faced after trial was "only 8 years more than he was offered in return for a guilty plea, [so] he decided to go to trial").

In this case, no erroneous information was provided by defense counsel in February 2001 that could have swayed the defendant's rejection of the purported plea deal. The defendant's allegation central to his claim of ineffective assistance of counsel is that defense counsel provided *incomplete* information as to the *minimum* sentence he faced after trial. The defendant does not contend he was unaware that he faced a minimum of 20 years and as many as 60 years on the charge of first degree murder. Nor does the defendant contend, as the defendants did in *Curry* and *Paleologos*, that defense counsel represented that following a conviction he likely faced a sentence in line with the plea offer of 20 years. *Curry*, 178 Ill. 2d at 516 (the plea offer was 4½ years, defense counsel represented he faced 4 years after trial); *Paleologos*, 345 Ill. App. 3d at 705 (the plea offer was 22 years, defense counsel represented he faced 30 years after trial).

The only reasonable inference to be drawn from the defendant's rejection of the minimum sentence of 20 years for first degree murder is that the defendant desired to pursue his constitutional right to trial, to assert his claim of self-defense. In other words, his overriding desire was to fight the first degree murder charge. Of course, if convicted of first degree murder, he could do no better than a 20-year sentence that he claims he was offered upon a plea of guilty. Under these circumstances, it cannot be denied that the defendant elected to "roll the dice," with full knowledge that he could be sentenced to as many as 60 years upon being convicted of first degree murder.

In *Curry* and *Paleologos*, the representation by trial counsel fell below an objective standard of reasonableness based on counsel's failure to comprehend when consecutive sentences were triggered

under the sentencing laws. This failure to comprehend the triggering of consecutive sentences, in turn, caused counsel to provide erroneous information. While defense counsel in *Curry* was proved correct in assessing that the defendant faced approximately 4 years on each of the three counts he faced if he proceeded to trial, counsel failed to comprehend that the 4-year terms would have to be served consecutively, for an aggregate term of 12 years. In *Paleologos*, counsel suffered from a similar failure to comprehend that the charges the defendant faced would trigger consecutive sentences. We noted that defense counsel argued "that the 'offenses were all allegedly committed during one transaction and it was error to sentence the defendant to a consecutive sentence." *Paleologos*, 345 Ill. App. 3d at 705. We found counsel's argument to be "in direct conflict with section 5—8—4(a)(ii)." *Paleologos*, 345 Ill. App. 3d at 705, citing 730 ILCS 5/5—8—4(a)(ii) (West 2000).

In the instant case, the defendant was aware that he faced up to 60 years if he were convicted of first degree murder, apart from any sentencing enhancement. This lengthy sentence did not dissuade the defendant from proceeding to trial, necessarily involving the rejection of the State's purported offer of 20 years in return for his plea of guilty, the minimum sentence for first degree murder. The record before us makes clear that the defendant was motivated by a desire to contest the charges, perhaps believing that the State's witnesses would not appear as he demanded trial. In any event, it is clear that he was fully aware that he faced no less than 20 years and as many as 60 years if he were found guilty of first degree murder. In rejecting the minimum sentence, the defendant was clearly looking for exoneration or, at worse, a lesser sentence than the 20 to 60 years he faced. The allegations in the defendant's petition for postconviction relief fail to connect his rejection of the minimum sentence for first degree murder with any information (erroneous or otherwise) provided by defense counsel in February 2001. In other words, we find no allegation supporting even a gist of a claim of ineffectiveness of counsel.

Furthermore, unlike in *Curry* and *Paleologos*, we are not presented with a claim that either his pretrial attorney or his trial counsel represented that the defendant was gambling little by proceeding to trial. No allegation is made here that the defendant faced approximately 20 years following a conviction after trial. It is clear to us that the defendant proceeded to trial because he wished to avoid serving even the minimum sentence. He lost his gamble. The defendant's claim that had he known he faced a longer minimum sentence following trial, without more, does not persuade us that he would have acted differently in February 2001, nearly 2½ years before his bench trial.

More to the point, we are unpersuaded that the defendant was not *reasonably informed* that upon conviction of first degree murder he faced up to 60 years in the Illinois Department of Corrections. *Curry*, 178 Ill. 2d at 530 ("defense counsel's deficient performance deprived defendant of his right to be reasonably informed as to the direct consequences of accepting or rejecting that offer"). As we noted in our Rule 23 order affirming his sentence for first degree murder: "The sentence here *** is hardly disproportionate to the nature of the offense." *Miller*, slip op. at 22. The circuit court below found, beyond a reasonable doubt, that the defendant chased down Fowler, while firing his weapon. *Miller*, slip op. at 22.

Still further, unlike in *Curry* and *Paleologos*, the defendant offers no explanation why the minimum sentence was not an acceptable deal before trial; we understand why he makes that claim now.

We reject the defendant's implicit claim that the absence of information provided by trial counsel is the equivalent of giving the defendant "erroneous information" regarding his consideration of a plea offer to support an allegation of ineffective assistance of counsel. No facts are alleged in the petition to support the defendant's claim that his decision to reject a plea offer of the minimum sentence for first degree murder was somehow swayed by information he was not given. We find both *Curry* and *Paleologos* distinguishable from the instant case. The nature of the claim here is fundamentally different.

## Gist of Constitutional Claim

*Curry*, distinguishable as it is, stands as authority that the allegations in the defendant's postconviction petition, supported as they are by only the defendant's affidavits, are insufficient to state a gist of a constitutional claim.[2] The record in *Curry* contained the defendant's affidavit that he would have accepted the State's offer but for his defense counsel's deficient performance. The record also contained an affidavit from defense counsel, owning up to the erroneous information he provided to the defendant, misrepresentations which prompted the defendant to proceed to trial because little was at risk. Nonetheless, the supreme court cautioned that the defendant's claim that he would have pled guilty had he known that he faced a sentence three times greater than represented by defense counsel, standing alone, amounted to no more than " 'subjective, self-serving [testimony,] insufficient to satisfy the *Strickland* requirement for prejudice.' " *Curry*, 178 Ill. 2d at 531, quoting *Turner v. Tennessee*, 858 F.2d 1201,

---

[2]The affidavit from his mother offers nothing more than what is stated in the defendant's affidavits.

1206 (6th. Cir. 1988). The caution the supreme court expressed in *Curry* has direct application in this case.

In this case, the defendant alleges nothing more in his petition than "had it not been for counsel's failure to inform petitioner of the extended term *** petitioner would have graciously accepted the [S]tate[']s offer." This claim in the defendant's affidavit attached to his postconviction petition stands alone regarding his *Curry*-type claim. The absence of an affidavit from counsel that represented the defendant in February 2001 may be adequately explained in the defendant's second affidavit. See *People v. Hall*, 217 Ill. 2d 324, 333, 841 N.E.2d 913 (2005) (noncompliance may be excused under section 122—2 of the Act). However, based on the holding in *Curry* and the observations we made in *Paleologos*, the defendant fails to explain why an affidavit from trial counsel corroborating the reason the defendant elected to go to trial 2¹/₂ years later, rather than seek the minimum sentence for first degree murder by way of a plea bargain, was not attached to his postconviction petition. See *People v. Delton*, 227 Ill. 2d 247, 254-55, 882 N.E.2d 516 (2008), quoting *People v. Collins*, 202 Ill. 2d 59, 66, 782 N.E.2d 195 (2002) ("the failure to either attach the necessary ' "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal' "). No explanation is offered for the absence of an affidavit from trial counsel.

At the time the defendant rejected the State's purported offer, the defendant was aware that he faced up to 60 years in the Illinois Department of Corrections; that did not change or discourage the defendant from proceeding to trial. The sentence imposed in this case of 47 years fell within the sentencing range the defendant was aware he faced for first degree murder alone. The record makes clear that the defendant was not misinformed as to the nonenhanced sentencing range as to the first degree murder charge. The defendant does not allege that his defense counsel gave him contrary information. We find no well-pleaded facts in the defendant's petition to support his claim that his pretrial attorney provided deficient performance even if he omitted to tell him that he faced a minimum sentence of 45 years on the first degree murder charge.

As we made clear above, the defendant's claim that he would have pled guilty had he known that he faced a greater minimum sentence than he was offered to plead guilty to, standing alone, amounts to no more than " 'subjective, self-serving [testimony,] insufficient to satisfy the *Strickland* requirement for prejudice.' " *Curry*, 178 Ill. 2d at 531, quoting *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th. Cir. 1988). We believe this cautionary statement from our supreme court also applies

in assessing the sufficiency of an ineffective assistance of counsel claim in the context of a postconviction petition. We find no well-pleaded facts that give rise to any misrepresentations or erroneous information provided by defense counsel in February 2001 that caused the defendant to reject the purported plea of offer of the minimum sentence for first degree murder. Certainly, trial counsel, whose performance is not directly implicated by the defendant's claim of ineffective assistance of counsel, could have provided the defendant with an affidavit as to the defendant's motivation to proceed to trial, if in fact facing an enhanced sentence of 25 years would have made a difference. "[A *pro se* petition] must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. As a result, the failure to either attach the necessary ' "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal.' " *Delton*, 227 Ill. 2d at 254-55, quoting *Collins*, 202 Ill. 2d at 66.

We agree with the circuit court, the allegations in the defendant's petition are conclusory and as such fail to give rise to a gist of a constitutional claim. Allegations amounting to nothing more than broad conclusory allegations of ineffective assistance of counsel are not allowed under the Act. *Delton*, 227 Ill. 2d at 258, citing *People v. Blair*, 215 Ill. 2d 427, 453, 831 N.E.2d 604 (2005).

## CONCLUSION

The defendant was reasonably informed of the possible sentence he faced if convicted of first degree murder when he was informed that he faced no less than 20 years and as many as 60. The allegations in the defendant's postconviction petition fail to raise a gist of a constitutional claim of ineffective assistance of counsel based on counsel's alleged failure to inform the defendant that after trial, he faced a minimum sentence of 45 years in light of the 25-year sentence enhancement for committing murder by the use of a handgun, where the defendant was sentenced to 47 years in prison. No allegation is raised in defendant's petition to connect his decision to reject a minimum sentence plea offer and any erroneous information provided by defense counsel. The circuit court acted correctly in summarily dismissing the defendant's postconviction petition.

Affirmed.

R.E. GORDON, P.J., and HALL, J., concur.