# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Miller*, 2013 IL App (1st) 111147

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FLYNARD MILLER, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-11-1147 |
| Filed<br>Rehearing denied | April 15, 2013<br>May 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motion for leave to file a successive postconviction petition, in which he alleged that his counsel's failure to inform him that he faced a firearm enhancement of his sentence if he was convicted at trial caused him to reject a plea offer of an unenhanced sentence, was upheld on the grounds that he failed to show sufficient cause and prejudice and that his claim was fully litigated and decided on appeal from the summary dismissal of his initial postconviction petition making the same claim, thereby raising a *res judicata* bar to his successive petition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-24954; the Hon. James M. Obbish, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier and Deepa Punjabi, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy M. Watroba, and Haley Peck, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion. |
| | Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Flynard Miller was convicted of first degree murder and attempted first degree murder and sentenced to consecutive prison terms of 47 and 6 years. We affirmed on direct appeal. *People v. Miller*, No. 1-04-0114 (2005) (unpublished order pursuant to Supreme Court Rule 23) (*Miller I*). His 2006 postconviction petition was summarily dismissed, and we affirmed that dismissal. We issued an opinion addressing the merits of his claim (the "lost plea claim") that his rejection of a plea offer of an unenhanced sentence resulted from counsel failing to inform him that he faced a firearm enhancement if he was convicted at trial. *People v. Miller*, 393 Ill. App. 3d 629 (2009) (*modified upon denial of rehearing* August 31, 2009) (*Miller II*). Defendant now appeals from a circuit court order denying him leave to file a successive postconviction petition raising the same lost plea claim. He contends that he stated cause and prejudice sufficient to justify a successive petition. In particular, he contends that he established cause for the successive petition because (1) under *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012), the absence of counsel on his initial petition deprived him of the opportunity to fully and properly raise the lost plea claim, and (2) this court's affirmance of the summary dismissal of his initial petition was based on case law that has since changed under *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012). For the reasons stated below, we affirm the judgment of the circuit court.

¶ 2                                  BACKGROUND
¶ 3                        I. Trial Proceedings and Direct Appeal
¶ 4    Defendant and codefendant Joseph Eastling were charged in an October 2000 indictment with the first degree murder of Charles Fowler, by personal discharge of a firearm by both defendants proximately causing his death, and with the attempted murder and aggravated battery with a firearm of Michael Casiel, on or about September 16, 2000.
¶ 5    The evidence at trial showed that the incident began when defendant and Fowler bumped

into or jostled each other at the apartment Fowler shared with his fiancée, the mother of codefendant's child. Fowler left his apartment immediately after the bumping but returned with three friends, including Casiel. When Fowler entered his apartment, with no weapon visible and with his friends in the hallway, defendant and codefendant drew their guns and fired at him. Fowler and his friends fled, with defendant and codefendant in pursuit and still firing. Fowler collapsed near the doorway of the building. Defendant continued to chase and fire at Casiel and the others, striking Casiel. Police officers saw defendant's pursuit and firing, and two guns were recovered when defendant and codefendant were arrested. A bullet recovered at the scene was fired from defendant's gun, and a bullet removed from Fowler's body was from codefendant's gun. Defendant testified that he fired his gun in self-defense with the intent to merely scare Fowler.

¶ 6        The court found defendant guilty of first degree murder, attempted murder, and aggravated battery with a firearm, finding that he personally discharged a firearm that proximately caused death. Defendant was sentenced to 47 years' imprisonment for the murder, including a 25-year enhancement for personally discharging a firearm that proximately caused death, to be served consecutively with 6 years' imprisonment for the other two offenses.

¶ 7        On direct appeal, defendant unsuccessfully challenged the firearm enhancement and contended that he was not properly admonished regarding his right to file a motion to reconsider his sentence. We affirmed, except for vacating duplicate murder counts and the aggravated battery conviction on a one-act-one-crime basis. *Miller I*, No. 1-04-0114 (2005) (unpublished order under Supreme Court Rule 23).

¶ 8                        II. Initial Postconviction Petition and Appeal

¶ 9        In 2006, defendant filed a *pro se* postconviction petition raising in relevant part the lost plea claim. Specifically, he alleged that pretrial counsel[1] neglected to inform him that "if he did not take the plea bargain" offer of "20 years for the murder" and was found guilty, he was subject to a sentence enhancement of 25-years-to-life imprisonment for discharging a firearm that proximately caused death. Defendant attached affidavits from himself and his mother stating that the State made an offer of "20 years at 85% in exchange for a plea bargain wherein the charges of attempted murder and aggravated battery would be ousted" and that pretrial counsel informed them in February 2001 of the offer but did not tell them about the firearm enhancement. He stated that he would have accepted the offer, and she stated that she would have advised him to accept it, had they been aware of the enhancement. Defendant also stated that pretrial counsel at first agreed to sign an affidavit to the effect that he prejudiced defendant by failing to inform him that he was facing a sentencing enhancement of 25 years up to natural life, but "when time came for [pretrial counsel] to sign the affidavit, he refused."

¶ 10       In October 2006, the circuit court summarily dismissed the petition, finding that the lost

---

[1]A different attorney represented defendant at trial and for clarity will be referred to as "trial counsel."

plea claim was predicated on conclusory allegations.

¶ 11 On appeal, defendant contended that his petition stated the gist of a meritorious claim regarding the lost plea. We summarized his claim:

> "[D]efendant seeks to rely on not being told that he faced a sentencing enhancement of 25 years for proximately causing the first degree murder of Fowler to explain his rejection of an offer to plead guilty and receive the minimum sentence of 20 years for first degree murder. The defendant does not deny that he was duly informed that he faced up to 60 years if convicted of first degree murder. Nonetheless, he contends had he been informed that he faced a minimum sentence of 45 years by his pretrial attorney, he would have accepted a plea offer of 20 years purportedly extended in February 2001." *Miller II*, 393 Ill. App. 3d at 635.

¶ 12 Defendant cited *People v. Curry*, 178 Ill. 2d 509 (1997), and *People v. Paleologos*, 345 Ill. App. 3d 700 (2003), in support of his contention. In both *Curry* and *Paleologos*, the defendant rejected a plea offer without being informed that he was subject to consecutive sentencing if convicted after trial, and then received a consecutive sentence well in excess of the rejected offer. In *Curry*, a 4½-year offer was made, counsel informed the defendant that he would face approximately 4 years if tried, and the defendant was actually sentenced to 3 consecutive 4-year terms. In *Paleologos*, the defendant rejected a 22-year offer on advice that he faced up to 30 years if tried, but a 50-year aggregate sentence was imposed.

¶ 13 We acknowledged that our "supreme court noted the broad constitutional principle: 'A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' " (Emphasis in original.) *Miller II*, 393 Ill. App. 3d at 633-34 (quoting *Curry*, 178 Ill. 2d at 528). However, we distinguished defendant's case from *Curry* and *Paleologos*:

> "In *Curry* and *Paleologos*, central to the claims of ineffective assistance of counsel was the misinformation provided by each defense counsel, prompting each defendant to proceed to trial. [Citations.]
>
> In this case, no erroneous information was provided by defense counsel in February 2001 that could have swayed the defendant's rejection of the purported plea deal. The defendant's allegation central to his claim of ineffective assistance of counsel is that defense counsel provided *incomplete* information as to the minimum sentence he faced after trial. The defendant does not contend he was unaware that he faced a minimum of 20 years and as many as 60 years on the charge of first degree murder. Nor does the defendant contend, as the defendants did in *Curry* and *Paleologos*, that defense counsel represented that following a conviction he likely faced a sentence in line with the plea offer of 20 years. [Citations.]
>
> The only reasonable inference to be drawn from the defendant's rejection of the minimum sentence of 20 years for first degree murder is that the defendant desired to pursue his constitutional right to trial, to assert his claim of self-defense. In other words, his overriding desire was to fight the first degree murder charge. Of course, if convicted of first degree murder, he could do no better than a 20-year sentence that he claims he was offered upon a plea of guilty. Under these circumstances, it cannot be denied that the

defendant elected to 'roll the dice,' with full knowledge that he could be sentenced to as many as 60 years upon being convicted of first degree murder." (Emphasis in original and omitted.) *Miller II*, 393 Ill. App. 3d at 636.

We noted that the:

"sentence imposed in this case of 47 years fell within the sentencing range the defendant was aware he faced for first degree murder alone. The record makes clear that the defendant was not misinformed as to the nonenhanced sentencing range as to the first degree murder charge. The defendant does not allege that his defense counsel gave him contrary information. We find no well-pleaded facts in the defendant's petition to support his claim that his pretrial attorney provided deficient performance even if he omitted to tell him that he faced a minimum sentence of 45 years on the first degree murder charge." *Miller II*, 393 Ill. App. 3d at 639.

¶ 14 We also held that his affidavit that he would have accepted the plea offer had he known of the firearm enhancement was subjective and self-serving, finding that the "affidavit from his mother offers nothing more than what is stated in the defendant's affidavits" (*Miller II*, 393 Ill. App. 3d at 638 n.2) and noting that he had not provided an affidavit from pretrial counsel as the *Curry* defendant had (*Miller II*, 393 Ill. App. 3d at 634, 639-40). For both reasons–the claim was legally unfounded and based on conclusory allegations of fact–we affirmed the summary dismissal of the initial petition. *Miller II*, 393 Ill. App. 3d at 640.

¶ 15                            III. Second Postconviction Petition

¶ 16 In January 2011, defendant filed a *pro se* motion for leave to file a successive postconviction petition. He claimed that he had cause based upon trial counsel's discipline by the Attorney Registration and Disciplinary Commission (ARDC) and with regard to new ineffective assistance claims other than the lost plea claim. The proposed petition included the lost plea claim; that is, it alleged ineffective assistance of counsel by, in relevant part, "fail[ing] to inform the petitioner that he faced an extended term of 25 years[, which] precluded the petitioner from making a decision based upon all available facts, *i.e.*, a plea bargain or jury trial."

¶ 17 On March 25, 2011, the circuit court found that defendant failed to show cause and prejudice and denied him leave to file a successive petition. In its detailed order addressing the various claims in the successive petition, the court noted that the lost plea claim "could have been raised" on direct appeal or in the initial postconviction petition. This timely appeal followed.

¶ 18                             ARGUMENTS OF THE PARTIES

¶ 19 Defendant contends that he has stated cause and prejudice sufficient to support his successive petition. Regarding cause, he relies upon the Supreme Court's recent decisions in *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012). Defendant argues that the Supreme Court held that Martinez's *habeas* petition could proceed due to the lack of effective counsel in his Arizona collateral

proceeding. Thus, defendant argues, the summary dismissal of his own initial petition does not bar the instant petition, because in that initial proceeding he did not have an opportunity, through counsel, to fully and properly raise the lost plea claim. Defendant also argues that our earlier affirmance of the summary dismissal was based on case law that has changed due to *Lafler*. In particular, though Illinois has recognized a right to effective assistance of counsel in plea negotiations and advice, *Lafler* clarified that the requisite prejudice for an ineffectiveness claim is only shown when, in addition to the reasonable probability that the defendant and trial court would have accepted the plea, the sentence the defendant received after trial was longer than the plea offer.

¶ 20    Defendant also contends that he can show prejudice sufficient to file a successive petition and relax *res judicata* constraints by arguing that his petition states the gist of a meritorious claim that pretrial counsel's erroneous or incomplete advice deprived him of his opportunity to plead guilty. Thus, he expressly invokes the frivolous-and-patently-without-merit standard of the first stage of postconviction proceedings.

¶ 21    In its response, the State initially notes that neither the pending motion to file a successive petition nor the attached proposed petition is supported by affidavits or other documentation regarding the lost plea claim. The State also responds that defendant's lost plea claim is barred as *res judicata* because the parties fully litigated, and this court decided, the lost plea claim on appeal from the summary dismissal of the initial petition. The State contends that *Martinez* does not apply here because it addressed only federal *habeas* petitions and refrained from addressing whether there is a constitutional right, applicable to the states, to counsel in initial-review collateral proceedings. The State also contends that *Martinez* is inapplicable or distinguishable because Arizona courts will not consider claims of ineffective assistance of counsel on direct appeal, relegating them solely to collateral proceedings, while Illinois courts do consider ineffectiveness claims on direct appeal. Regarding *Lafler*, the State contends that it does not change the law so as to justify relaxing *res judicata* because Illinois already recognized claims that a defendant rejected a plea on erroneous advice of counsel on direct appeal and in postconviction proceedings. Moreover, the State responds, our opinion in *Miller* rejecting defendant's lost plea claim rests upon grounds unchanged by *Lafler*; namely, that the initial-petition claim that defendant would have rejected the plea offer had he known of the firearm enhancement was merely conclusory.

¶ 22                                    APPLICABLE LAW
¶ 23                            I. General Governing Principles
¶ 24    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)) creates a three-stage procedure for addressing a defendant's initial postconviction petition. Within 90 days of the filing of a petition, "the court shall examine such petition" and if "the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order" constituting a final judgment. 725 ILCS 5/122-2.1(a) (West 2010). A petition may be summarily dismissed as frivolous or patently without merit only if it has no arguable basis either in law or in fact, and we review a summary dismissal *de novo*. *People v. Tate*, 2012 IL 112214, ¶¶ 9-10. Our supreme court has upheld section 122-2.1 against

constitutional challenges to its authorizing of dismissal prior to the appointment of counsel. *People v. Porter*, 122 Ill. 2d 64, 69-77 (1988). There is no constitutional right to the appointment of counsel in postconviction cases generally, and particularly not for the first stage of proceedings, even where the petition was "essentially the first genuine opportunity [the defendant] had to present his ineffective assistance of trial counsel claims [that] were not appropriate for direct review" because they were outside the trial record. *People v. Ligon*, 239 Ill. 2d 94, 112 (2010).

¶ 25    If the court does not summarily dismiss the petition, then the petition may be amended, and the court shall appoint counsel if the defendant requests it and is indigent. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2010). However, the right to counsel in postconviction cases beyond the first stage is wholly statutory, so that counsel owes a duty of reasonable assistance that is satisfied by compliance with Supreme Court Rule 651(c), that is, by: (1) consulting with the defendant to ascertain the claimed deprivation of constitutional rights; (2) examining the record; and (3) making any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). If the case is not dismissed upon the State's motion for failing to make a substantial showing of a constitutional violation, then an evidentiary hearing may be held on the allegations in the petition. 725 ILCS 5/122-5, 122-6 (West 2010); *Tate*, 2012 IL 112214, ¶¶ 10, 12.

¶ 26    A defendant may file only one petition under the Act without leave of the court, which "may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial postconviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2010). Cause is "an objective factor that impeded [the petitioner's] ability to raise a specific claim during his or her initial postconviction proceedings." 725 ILCS 5/122-1(f) (West 2010). In other words, cause may be shown by the petitioner pleading some objective factor external to the defense that impeded counsel or defendant from timely raising the claim in an earlier proceeding. *People v. Gillespie*, 407 Ill. App. 3d 113, 123 (2010). Prejudice exists when "the claim not raised during his or her initial postconviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2010). While the test for initial petitions to survive summary dismissal is that the petition state the gist of a meritorious claim–that is, a claim of arguable merit–the cause and prejudice test for successive petitions is more exacting than the gist or arguable merit standard. *People v. Edwards*, 2012 IL App (1st) 091651, ¶¶ 21-22, 26.

¶ 27    Because a postconviction proceeding is not an appeal from the judgment of conviction but a collateral attack on the trial proceedings, issues raised and decided on direct appeal are barred in postconviction proceedings under the doctrine of *res judicata*. *Tate*, 2012 IL 112214, ¶ 8. Similarly, a "ruling on an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised on the initial petition." *People v. Orange*, 195 Ill. 2d 437, 449 (2001). More broadly, "any issues that have previously been decided by a reviewing court are barred by *res judicata*." *People v. Harris*, 224 Ill. 2d 115, 124-25 (2007).

¶ 28                              II. *Martinez v. Ryan*

¶ 29      In its 2012 *Martinez* ruling, the United States Supreme Court framed the issue as follows:

"The State of Arizona does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review. Instead, the prisoner must bring the claim in state collateral proceedings. In the instant case, however, petitioner's postconviction counsel did not raise the ineffective-assistance claim in the first collateral proceeding, and, indeed, filed a statement that, after reviewing the case, she found no meritorious claims helpful to petitioner. On federal habeas review, and with new counsel, petitioner sought to argue he had received ineffective assistance of counsel at trial and in the first phase of his state collateral proceeding. Because the state collateral proceeding was the first place to challenge his conviction on grounds of ineffective assistance, petitioner maintained he had a constitutional right to an effective attorney in the collateral proceeding. While petitioner frames the question in this case as a constitutional one, a more narrow, but still dispositive, formulation is whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding." *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1313.

¶ 30      The *Martinez* Court recited the general law governing federal *habeas* petitions: that to ensure that state judgments are accorded finality and respect, the doctrine of procedural default bars a federal court from reviewing the merits of claims, including constitutional claims, that a state court declined to hear under a firmly established and consistently followed state procedural rule. *Id.* at ___, 132 S. Ct. at 1316. However, a federal court faced with a *habeas* petition may consider a defaulted claim upon a showing of cause for the default and prejudice from a violation of constitutional or other federal law. *Id*. at ___, 132 S. Ct. at 1316.

¶ 31      Generally, negligence by postconviction counsel does not qualify as cause. *Id.* at ___, 132 S. Ct. at 1316. However, the Court held, "a key difference between initial-review collateral proceedings and other kinds of collateral proceedings" is that, "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim. This Court on direct review of the state proceeding could not consider or adjudicate the claim." *Id.* at ___, 132 S. Ct. at 1316. Thus, "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims." *Id.* at ___, 132 S. Ct. at 1316. However, the:

"same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at ___, 132 S. Ct. at 1316.

¶ 32      The Court noted that where an initial-review collateral proceeding is the first forum to raise a claim of ineffectiveness by trial counsel, that proceeding is equivalent to a direct appeal regarding the ineffectiveness claim because the state court is addressing the merits of

the ineffectiveness claim for the first time and because defendants representing themselves in such proceedings are generally ill-equipped to do so without either "a brief from counsel or an opinion of the court addressing their claim of error." *Id*. at \_\_\_, 132 S. Ct. at 1317. The Court also noted that the effect is similar where a state does not appoint counsel for initial-review collateral proceedings because imprisoned defendants may not understand the law and are practically or logistically less able to develop the evidentiary basis for the ineffectiveness claim. *Id*. at \_\_\_, 132 S. Ct. at 1317.

¶ 33    The *Martinez* Court noted that the "rules for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the Court's discretion" and "reflect an equitable judgment that only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Id.* at \_\_\_, 132 S. Ct. at 1318. Allowing a federal *habeas* court to consider an ineffectiveness claim when that claim was procedurally defaulted in an initial-review collateral proceeding due to either the absence of, or errors by, counsel is an acknowledgment as a matter of equity that the initial-review collateral proceeding may thereby have been insufficient to ensure that proper consideration was given to a substantial claim of ineffectiveness. *Id.* at \_\_\_, 132 S. Ct. at 1318. Therefore, the Court held, "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim" that is demonstrated by the prisoner to be substantial–to have "some merit"–either "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial" or "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective." *Id.* at \_\_\_, 132 S. Ct. at 1318.

¶ 34    Regarding the provision of counsel for substantial claims of ineffectiveness, the Court observed that many states appoint counsel in initial collateral proceedings either universally, where the claims have some merit to them or the court deems the record worthy of further development, or where an evidentiary hearing is needed. *Id*. at \_\_\_, 132 S. Ct. at 1319. "It is likely that most of the attorneys appointed by the courts are qualified to perform, and do perform, according to prevailing professional norms; and, where that is so, the States may enforce a procedural default in federal habeas proceedings." *Id.* at \_\_\_, 132 S. Ct. at 1319. The Court observed that its "limited qualification" of the general rule that negligence by postconviction counsel does not establish cause "does not implicate the usual concerns with upsetting reliance interests protected by *stare decisis* principles" and "remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." *Id.* at \_\_\_, 132 S. Ct. at 1319.

¶ 35    The *Martinez* Court emphasized that its decision was based on equitable rather than constitutional principles: The Court, therefore, would not address whether constitutional principles required an exception to the general rule that negligence of postconviction counsel does not constitute cause. *Id*. at \_\_\_, 132 S. Ct. at 1315. "The precise question here is whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Id*. at \_\_\_, 132 S. Ct. at 1315. The Court contrasted the effects of its equitable

decision from a constitutional one:

> "A constitutional ruling would provide defendants a freestanding constitutional claim to raise; it would require the appointment of counsel in initial-review collateral proceedings; it would impose the same system of appointing counsel in every State; and it would require a reversal in all state collateral cases on direct review from state courts if the States' system of appointing counsel did not conform to the constitutional rule. An equitable ruling, by contrast, permits States a variety of systems for appointing counsel in initial-review collateral proceedings. And it permits a State to elect between appointing counsel in initial-review collateral proceedings or not asserting a procedural default and raising a defense on the merits in federal habeas proceedings. In addition, state collateral cases on direct review from state courts are unaffected by the ruling in this case." *Id.* at ___, 132 S. Ct. at 1319-20.

¶ 36                              III. *Lafler v. Cooper*

¶ 37    In *Lafler*, issued a day after *Martinez*, the United States Supreme Court was faced with a claim of ineffective assistance of counsel for giving erroneous advice that allegedly caused the defendant to reject a plea offer he otherwise would have accepted. The parties conceded or agreed that counsel's advice with respect to the plea offer fell below the constitutional standard of effective assistance of counsel. Thus, the issue before the Court was how to apply the prejudice prong of the *Strickland* ineffective-assistance test where ineffectiveness caused a defendant to reject a plea offer and he was then convicted at trial. *Lafler*, 566 U.S. at ___, 132 S. Ct. at 1383. The circuit court of appeals had found, and the defendant argued, that the prejudice arose from having to stand trial. The prejudice test adopted by the Sixth Circuit was, as the Supreme Court described it, that:

> "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at ___, 132 S. Ct. at 1385.

In contrast, the government argued that prejudice under *Strickland* ineffectiveness cannot arise from plea bargaining where the defendant is convicted in a fair trial. *Id.* at ___, 132 S. Ct. at 1385. The Court analyzed and ultimately rejected the government's contention.

¶ 38    The Court then turned to the issue of the appropriate remedy when "a defendant shows ineffective assistance of counsel has caused the rejection of a plea leading to a trial and a more severe sentence." *Id.* at ___, 132 S. Ct. at 1388. The Court distinguished two kinds of cases with two different remedies. In cases where the plea offered the defendant no more than a reduced sentence, because the charges to which the defendant would have pled guilty were the same ones he was in fact convicted of at trial, then "the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." *Id.* at ___, 132 S. Ct. at 1389.

If such a reasonable probability was shown, the court would have discretion to determine whether the defendant should receive the sentence in the plea offer, the sentence he received at trial, or another sentence between them. *Id*. at ___, 132 S. Ct. at 1389. However, where resentencing is not a proper remedy because the offer involved a guilty plea to fewer or lesser charges than those the defendant was convicted of at trial, or because a mandatory sentence applied following trial, then the proper remedy is to put the plea offer back into consideration and allow the court to decide whether to accept the plea or allow the trial conviction to stand. *Id*. at ___, 132 S. Ct. at 1389.

¶ 39                                                    ANALYSIS

¶ 40    Defendant's successive postconviction petition included claims of: (1) ineffective assistance of trial counsel due to drug and alcohol problems and disciplinary proceedings before the ARDC, (2) due process violations, and (3) actual innocence. The trial court found that defendant failed to show how trial counsel's disciplinary problems involving other cases caused counsel to provide substandard representation in defendant's case. The trial court found that defendant's claimed due process violations failed to meet the cause and prejudice test and lacked merit. Finally, the trial court found that defendant's claim of actual innocence was not freestanding and was based on cumulative evidence. Defendant has not made any argument in this court challenging the trial court's findings as to these other claims in his successive postconviction petition or that the trial court erred in summarily dismissing the successive petition as to any claims other than the lost plea claim. "Issues not raised and argued before the appellate court are treated as waived." *Meyers v. Kissner*, 149 Ill. 2d 1, 8 (1992). In this appeal defendant only asserts cause and prejudice sufficient to relax *res judicata* to justify a successive petition on defendant's claim of ineffective assistance of pretrial counsel for not informing defendant of the increased minimum sentence he faced if he rejected the State's plea offer and proceeded to trial.

¶ 41    Here, we conclude that the circuit court did not err in denying defendant leave to file a successive petition because defendant failed to show the requisite cause and prejudice and because the lost plea claim was barred as *res judicata*. We decline defendant's invitation to apply *Martinez* here. First and foremost, *Martinez* applies to federal courts considering *habeas* petitions and is expressly not a constitutionally based decision. Second, *Martinez* is limited to "initial-review collateral proceedings." *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1315 ("This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). The Court defined "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at ___, 132 S. Ct. at 1315. This case does not fall under *Martinez* because Illinois, unlike Arizona, considers ineffective-assistance claims on direct appeal. *People v. Banks*, 237 Ill. 2d 154 (2010); *People v. Phipps*, 238 Ill. 2d 54 (2010). Third, even if *Martinez* did apply to Illinois postconviction petitions, only ineffectiveness claims shown to be substantial would trigger any duties under *Martinez* to relax *res judicata* where the failure to timely raise the ineffectiveness claim resulted from a lack of counsel or ineffective counsel. *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1313. See

-11-

*Id.* at ___, 132 S. Ct. at 1320 ("a procedural default will not bar a *** court from hearing a substantial claim of ineffective assistance at trial if, in the [proceedings which provide the first occasion to raise a claim of ineffective assistance at trial], there was no counsel or counsel in that proceeding was ineffective"). *Martinez* is particularly unpersuasive in this case, because (1) we have already considered the lost plea claim on its merits at length in a published opinion, and (2) although defendant did not have the benefit of counsel in the circuit court on his initial postconviction petition, he had counsel to formulate and present arguments in support of the lost plea claim in the *de novo* review of that dismissal before this court.

¶ 42    In *Miller II*, we accepted defendant's claim that there had been a plea offer of 20 years and that pretrial counsel did not mention the firearm enhancement in advising him regarding the plea. *Miller II*, 393 Ill. App. 3d at 639. We affirmed the summary dismissal on the substantive basis that the case law relied upon by defendant, *Curry* and *Paleologos,* is distinguishable from his case. *Miller II*, 393 Ill. App. 3d at 638. We rejected as self-serving defendant's assertion that he would have accepted the plea had he known of the enhancement. *Miller II*, 393 Ill. App. 3d at 639-40. We still find it fanciful for defendant to claim that he would have accepted a plea offer of 20 years had he known that his minimum sentence for murder with the enhancement was 45 years when he rejected that offer knowing that he could face 60 years for unenhanced murder.

¶ 43    We also conclude that *Lafler* has not changed the legal circumstances of this case as defendant contends. The *Lafler* rule is that a defendant shows prejudice from erroneous plea-related advice of counsel by showing that (1) there is a reasonable probability that, but for that advice, the defendant and the trial court would have accepted the plea offer, and (2) the sentence after trial was longer than the plea offer. As defendant himself notes, it is on the second point that *Lafler* states new or changed law. However, our *Miller* opinion is firmly based upon the first point. We expressly found that defendant's original-petition claim–that he would have accepted the plea had he known of the firearm enhancement–was merely conclusory, despite being supported by affidavits to that effect from defendant and his mother, because defendant had been aware that he could face 60 years in prison when he rejected the 20-year plea offer. The *Lafler* Court's addition of the more severe sentence element does not change that finding.

¶ 44    Defendant's argument to the contrary–"[a]s *Lafler* has now explained, the focus of the prejudice inquiry is whether [defendant] would have had a less severe sentence had he accepted the State's offer"–collapses the two elements of prejudice under *Lafler* into the latter one. That conflation is most succinctly refuted by the *Lafler* Court's assertion that "the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." *Lafler*, 566 U.S. at ___, 132 S. Ct. at 1389. If the focus of the prejudice inquiry were the mechanical question of whether the sentence exceeds the plea offer, then an evidentiary hearing would be utterly unnecessary. The reasonable probability of plea acceptance is a separate and distinct element in the *Lafler* prejudice analysis from the longer-sentence factor.

¶ 45                        CONCLUSION

¶ 46        Accordingly, the judgment of the circuit court is affirmed.

¶ 47        Affirmed.