2020 IL App (1st) 170788-U

FIFTH DIVISION
January 10, 2020

No. 1-17-0788

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 00 CR 24954-02 |
| | ) | |
| FLYNARD MILLER, | ) | |
| | ) | Honorable James Michael Obbish, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court did not err in denying petitioner's motion for leave to file a successive postconviction petition because his aggregate 53-year sentence, which was imposed when petitioner was 19 years old, is not an unconstitutional *de facto* life sentence.  Affirmed.

¶ 2    Following a bench trial, petitioner Flynard Miller was convicted of first-degree murder and attempted first-degree murder, and sentenced to consecutive prison terms of 47 and 6 years, respectively.  We affirmed on his direct appeal (*People v. Miller*, No. 1–04–0114 (2005) (unpublished order pursuant to Supreme Court Rule 23)), the summary dismissal of his initial postconviction petition (*People v. Miller*, 393 Ill. App. 3d 629 (2009)), and the denial of two

subsequent motions for leave to file a successive postconviction petition (*People v. Miller*, 2013 IL App (1st) 111147); *People v. Miller*, 2016 IL App (1st) 141101-U). Petitioner filed a motion for leave to file a third successive postconviction petition, which the circuit court denied. He now appeals that denial, contending that his aggregate sentence is an unconstitutional *de facto* life sentence. We affirm.

¶ 3                                   BACKGROUND

¶ 4     Petitioner and Joseph Eastling were charged with the first-degree murder of Charles Fowler (by personal discharge of a firearm proximately causing his death), and the attempted murder and aggravated battery with a firearm of Michael Casiel, on or about September 16, 2000.

¶ 5     The trial evidence showed that the incident began when petitioner and Fowler bumped into each other at the apartment Fowler shared with Molina Matthews, Fowler's fiancée and the mother of Eastling's child. Fowler left his apartment after the bumping but returned with three friends, including Casiel and Anthony Hendrix, to support him in removing petitioner and Eastling from his apartment. Matthews, Casiel, and Hendrix testified that neither Fowler nor his friends were armed. Fowler entered his apartment while his friends stayed in the hallway. Petitioner and Eastling drew their guns, and petitioner fired at Fowler. Fowler and his friends fled, with petitioner and Eastling in pursuit and still firing. Casiel heard six or seven additional shots. Fowler was holding onto Casiel but collapsed near the doorway of the building.

¶ 6     Petitioner continued the chase, firing at Casiel and the others, and striking Casiel. Chicago police officer Ephgrave saw petitioner's pursuit and shooting, did not see Casiel holding a gun, and did not see a gun near Fowler's body. Petitioner and Eastling fled but were arrested at the scene. Officer Ephgrave saw each drop or try to "ditch" a gun. A bullet recovered from a wall of

the apartment was fired from petitioner's gun, and a bullet removed from Fowler's body was fired from Eastling's gun. An autopsy of Fowler revealed five gunshot wounds.

¶ 7     Petitioner testified that Fowler had a gun in his waistband when he entered the apartment. Petitioner claimed that he fired into the wall in self-defense to scare off Fowler and that he was intentionally firing at the walls or the ground as he chased Fowler and the others.

¶ 8     The court found petitioner guilty of first-degree murder, attempted murder, and aggravated battery with a firearm, finding that he personally discharged a firearm that proximately caused death. He was sentenced to 47 years' imprisonment for murder, including a 25-year firearm enhancement, consecutive to 6-year terms for the other two offenses. Codefendant Eastling was also convicted of first-degree murder and attempted murder, and sentenced to 47 and 6 years' imprisonment, respectively.

¶ 9     On direct appeal, petitioner challenged the firearm enhancement on various grounds and contended that he was not properly admonished regarding his right to file a motion to reconsider his sentence. We affirmed, except for vacating certain duplicate murder convictions and the aggravated battery conviction under the one-act-one-crime doctrine. *Miller*, No. 1-04-0114 (2005) (unpublished order under Supreme Court Rule 23). We noted that the evidence indicated that defendant admitted having fired his weapon "at least four times." *Id.*, slip op. at 10.

¶ 10     In 2006, petitioner filed a *pro se* postconviction petition arguing in part that his pretrial counsel failed to inform him that, if he did not accept a plea offer and was later found guilty, he would be subject to a firearm enhancement ("the lost-plea claim"). The circuit court summarily dismissed the petition, and we affirmed. *Miller*, 393 Ill. App. 3d 629.

¶ 11     In 2011, petitioner filed a *pro se* motion for leave to file a successive postconviction petition, which included in part the lost-plea claim and various other claims based upon a witness's

attached affidavit. The court denied the motion, and we affirmed based on *res judicata* and petitioner's failure to show cause and prejudice. *Miller*, 2013 IL App (1st) 111147.

¶ 12    In November 2013, petitioner filed a *pro se* motion for leave to file a second successive postconviction petition. He again raised the lost-plea claim, as well as claims of newly discovered evidence of actual innocence, ineffective assistance of trial counsel, and the State's failure to disclose exculpatory evidence of a witness who would have corroborated his self-defence claim. The court denied the motion, and we affirmed. *Miller*, 2016 IL App (1st) 141101-U.

¶ 13    On September 26, 2016, petitioner sought leave to file a third successive postconviction petition. For the first time, petitioner contended that his 53-year aggregate sentence was an unconstitutional *de facto* life sentence pursuant to the holdings in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny.[1] Petitioner noted that he was sentenced as a 19-year-old young adult and argued that newly discovered evidence in neurobiology and developmental psychology "proved" that brain development does not stop until a person reaches the "mid-20's." He then concluded that, since "the brains of young adults are no more developed then [*sic*] a juvenile[']s brain, he was entitled to "*Miller v. Alabama*[-]type protection," and his sentence violated both (1) the proportionate penalties clause of the Illinois constitution as applied to him and (2) the Eighth Amendment of the federal constitution. Petitioner added that he showed cause for his failure to raise this claim in his initial petition and prejudice resulting from this failure. As to cause, petitioner argued that the newly discovered "neuroscience" as well the decisions such as *People v. House*, 2015 IL App (1st) 110580, and *People v. Harris*, 2016 IL App (1st) 141744, arose after

---

[1] Petitioner further challenged the constitutionality of the "automatic transfer statute" (705 ILCS 405/5-130 (West 2016)), but he has abandoned that claim on appeal.

the filing of his initial and successive petitions. Petitioner argued that he suffered prejudice because his 53-year sentence was unconstitutional in light of this new evidence and case law.

¶ 14    On February 24, 2017, the circuit court entered a written order denying petitioner's motion for leave to file his third successive postconviction petition. The court found that "*Miller* and its related cases" are unhelpful to petitioner because they are applicable to juveniles and petitioner was 19 years of age at the time of the offense. The court further found that *House* and *Harris* were factually distinguishable, namely, that the defendant in *House* was merely a "lookout rather than *** directly responsible for the murder," and the defendant in *Harris* would be released no earlier than age 89, whereas petitioner would be released at age 71.[2] This appeal followed.

¶ 15                                    ANALYSIS

¶ 16    Petitioner contends that the circuit court erred in denying his motion for leave to file a third successive postconviction petition. Petitioner argues that the court's ruling improperly disregarded the "evolving body of law" that shows "growing disapproval for *de facto* life sentences for youthful offenders." Petitioner states that his motion met the cause-and-prejudice test for obtaining leave to file a successive postconviction petition, and he asks that we either vacate his sentence and remand for new sentencing, or in the alternative, reverse the court's denial and remand this cause for further postconviction proceedings.

¶ 17    The Act allows a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the

---

[2] The circuit court's order erroneously calculated petitioner's age upon release as 74.

range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are *res judicata,* and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. *Id.* at 274; 725 ILCS 5/122-3 (West 2016).

¶ 18 Moreover, the Act provides that only one petition may be filed by a petitioner without leave of court. 725 ILCS 5/122-1(f) (West 2016). As a result, successive postconviction petitions are "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39. The granting of leave to file a successive petition is defined in terms of the cause-and-prejudice test, where cause is defined as some objective factor external to the defense that impeded efforts to raise the claim in an earlier proceeding, and prejudice occurs where the alleged error "so infected" the trial that the resulting conviction or sentence violates due process. *Id.* ¶ 14 (quoting 725 ILCS 5/122-1(f) (West 2014)).

¶ 19 To meet the cause-and-prejudice test for a successive petition, a petitioner must " 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *People v. Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)). Both elements of the cause-and-prejudice test must be met for the petitioner to prevail. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). The cause-and-prejudice test is a "more exacting standard" than the " 'gist' standard" under which initial postconviction petitions are reviewed. *People v. Conick*, 232 Ill. 2d 132, 142 (2008). We review *de novo* the circuit court's denial of leave to file a successive petition. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 32.

¶ 20 Petitioner first contends that *Miller*, which held that the Eighth Amendment prohibited mandatory life sentences for offenders under the age of 18, should nonetheless extend to young

adult offenders such as himself. Petitioner argues that the circuit court should not have imposed a 53-year "*de facto* life sentence" on him without considering various "youth-related factors."

¶ 21 Petitioner's claim is unavailing. *Miller* explicitly held that the Eighth Amendment only prohibits "mandatory life without parole *for those under the age of 18*" at the time of their crimes. (Emphasis added.) *Miller*, 567 U.S. at 465. Our supreme court later observed that, when the United States Supreme Court held that 18 would be the age to differentiate between juvenile and adult offenders, it was not "based primarily on scientific research" and merely coincided with the point where society determines adulthood and childhood for many other purposes. *People v. Harris*, 2018 IL 121932, ¶ 60 (citing *Roper v. Simmons*, 543 U.S. 551, 574 (2005)). The *Harris* court further noted that new research findings still did not alter that "traditional line." *Id.* The court then expressed agreement with those courts that had repeatedly rejected this claim and held that the age of 18 still marked the line between juveniles and adults for sentencing purposes. *Id.* ¶ 61. Petitioner would clearly wish to change where that line is drawn, but doing so is best left to the legislature. See generally, *People v. Buffer*, 2019 IL 122327, ¶¶ 34-35.

¶ 22 Moreover, petitioner's reliance upon *People v. House*, 2015 IL App (1st) 110580, does not alter our holding. As the State points out, *House* involved a challenge under the proportionate penalties clause of the Illinois constitution, not the Eighth Amendment of the federal constitution. *Id.* ¶ 1. *House* is therefore inapplicable, and we must reject petitioner's claim.

¶ 23 Petitioner next contends that his sentence violates the proportionate penalties clause of the Illinois constitution. This clause provides in relevant part that "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral

sense of the community." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (citing *People v. Moss,* 206 Ill. 2d 503, 522 (2003)). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and "the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 24    Petitioner argues that his sentence shocks the moral conscious of the community because of recent studies on adolescent brain development, various studies on prisoner life expectancy, and petitioner's history and rehabilitative potential. Petitioner also argues that, pursuant to our supreme court's holding in *Harris*, his petition must advance for further proceedings.

¶ 25    The 18-year-old defendant in *Harris* argued on direct appeal that his 76-year sentence shocked the moral sense of the community given the facts of his case, his youth, and other mitigating circumstances. *Harris*, 2018 IL 121932, ¶ 36. The court, however, noted that there was no evidentiary hearing or factual development to support the defendant's claim in the trial court. *Id.* ¶ 46. The court thus held that the record was insufficiently developed to address his contention that *Miller* applied to his proportionate penalties claim. *Id.* ¶ 48. Nonetheless, the *Harris* court observed that the defendant could raise the claim in a postconviction petition. *Id.*

¶ 26    Here, petitioner argues that he should have the opportunity to develop the record to determine whether the protections of *Miller* can apply to a 19-year-old offender. Successive postconviction petitions, however, are "highly disfavored" (*Bailey*, 2017 IL 121450, ¶ 39) and meeting the cause-and-prejudice test is "more exacting standard" than the test for surviving the first stage of an initial postconviction petition (*Conick*, 232 Ill. 2d at 142). In addition, a petitioner must submit enough documentation to allow a circuit court to determine whether the cause-and-prejudice test was met. *Smith*, 2014 IL 115946, ¶ 35 (quoting *Tidwell*, 236 Ill. 2d at 161). The *Harris* court did not specify the requirements to meet the cause-and-prejudice test.

¶ 27    In this case, there is nothing to indicate how petitioner's own immaturity or individual circumstances would provide a compelling reason to allow him to file a third successive postconviction petition; instead, his motion merely contains general assertions that immaturity and brain development commonly associated with juveniles can also extend into young adulthood. Petitioner's recitation of various studies regarding the evolving science of juvenile maturity and development is insufficient to survive the more exacting standard that would warrant the filing of a successive postconviction petition.  *People v. Holman*, 2017 IL 120655, ¶¶ 30 (citing *People v. Thompson*, 2015 IL 118151).  The circuit court therefore correctly denied petitioner's motion because he could not establish prejudice under the cause-and-prejudice test.

¶ 28    In addition, petitioner's reliance upon *House* is unavailing.  In that case, another division of this court held that the defendant's mandatory life sentence (following a conviction for murder by accountability) violated the proportionate penalties clause, where the defendant was 19 years old at the time of the offense, had no prior violent criminal history, and was minimally culpable since he acted solely as a lookout.  *House*, 2019 IL App (1st) 110580-B, ¶¶ 46, 64.  Moreover, the *House* court stated that the defendant's 1993 conviction under an accountability theory "weighed heavily in our conclusion that his mandatory natural life sentence shocked the moral conscience of the community."  *Id.* ¶ 32.  The court further noted that, although the defendant received a mandatory natural life sentence, the 17-year-old codefendant, who "either fired the gun at the victims or struck them with the gun," was sentenced to 44 years' imprisonment with day-for-day good conduct credit and released in April 2018.  *Id.* ¶¶ 35-36.

¶ 29    Here, petitioner was not convicted merely based upon accountability:  he was one of two active shooters, and witness testimony established that, after the initial round of shooting and the victim's flight from the scene, petitioner continued to chase the victim and his associates while

firing at him. Fleeing witnesses heard six or seven shots, and the murdered victim was riddled with five gunshot wounds. As we noted in a prior appeal, defendant's 47-year sentence for first-degree murder comprised a 22-year sentence, which was near the minimum term of 20 years, and a mandatory 25-year firearm add-on. *Miller*, 393 Ill. App. 3d 640. His six-year sentence for attempted murder was the minimum permissible sentence. See 720 ILCS 5/8-4 (West 2000); 730 ILCS 5/5-8-1(a)(3) (West 2000). In addition, codefendant Eastling received the same sentence for his convictions for first-degree murder and aggravated battery. On these facts, *House* is distinguishable, and we cannot hold that petitioner's sentence shocks the moral sense of the community.

¶ 30    Finally, petitioner states in his reply brief that the State conceded in an unrelated case (*People v. Thompson*, No. 1-16-2596, on remand from our supreme court in *People v. Thompson*, 2015 IL 118151) that a defendant should be allowed to file his successive postconviction despite the absence of specific details as to that defendant's brain development. Petitioner argues that the State has "ignore[d] its prior concession." We question the timing of this argument. According to petitioner, the State's purported concession was filed in November 2018, which was one month before his opening brief. Petitioner, however, neglected to raise this point until the filing of his reply brief. Moreover, in *Thompson*, the defendant was convicted of fatally shooting his father—described by multiple defense witnesses as "a violent and abusive alcoholic"—following a "long history of physical and mental abuse." *Thompson*, 2015 IL 118151, ¶¶ 4-6. *Thompson* involved a different defendant, a different occurrence, and a different set of facts. Most importantly, the State agreed to the disposition in that case, so this court did not have the opportunity to address the issue on the merits. This final argument is thus meritless.

¶ 31                                         CONCLUSION

¶ 32    The circuit court did not err in denying petitioner's motion for leave to file a successive postconviction petition because his 53-year sentence, which was imposed when petitioner was 19 years old, is not an unconstitutional *de facto* life sentence. Accordingly, we affirm the judgment of the circuit court.

¶ 33    Affirmed.