2020 IL App (1st) 191206-U

FIFTH DIVISION
December 11, 2020

No. 1-19-1206

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 00 CR 24954 (01) |
| | ) ) ) | |
| JOSEPH EASTLING, | ) ) | Honorable James Michael Obbish |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court did not err in denying petitioner's motion for leave to file a successive postconviction petition because his aggregate 53-year sentence imposed for a first degree murder and an attempted murder conviction, which petitioner committed when he was a 18-year-old adult, is not an unconstitutional *de facto* life sentence.  Affirmed.

¶ 2    Following a bench trial, petitioner Joseph Eastling was convicted of first-degree murder and attempted first-degree murder, and sentenced to consecutive prison terms of 47 and 6 years, respectively.   We affirmed his direct appeal (*People v. Eastling*, No. 1-04-2692 (2006)

(unpublished order pursuant to Supreme Court Rule 23)) and granted petitioner's motion to withdraw his appeal from the summary dismissal of his initial postconviction petition (*People v. Eastling*, No. 1-08-2338 (2010)).  Petitioner then filed a motion for leave to file a successive postconviction petition, which the circuit court denied.  He now appeals that denial, contending that his aggregate sentence is an unconstitutional *de facto* life sentence.  We affirm.

¶ 3                                  BACKGROUND

¶ 4      Petitioner and Flynard Miller were charged with the September 16, 2000, first-degree murder of Charles Fowler (by personal discharge of a firearm proximately causing his death), and the attempted murder and aggravated battery with a firearm of Michael Casiel.  We have fully set forth the facts in codefendant Miller's appeal.  See *People v. Miller*, 2020 IL App (1st) 170788-U.  We will thus limit our discussion of the facts to those relevant to the issues presented in this appeal.

¶ 5      The trial evidence showed that the incident began when Miller and Fowler bumped into each other at the apartment Fowler shared with Molina Matthews, Fowler's fiancée and the mother of petitioner's child.  *Id.* ¶ 5.  Fowler left his apartment after the bumping but returned with three friends, including Casiel and Anthony Hendrix, to help him remove Miller and petitioner from the apartment.  *Id.*  Matthews, Casiel, and Hendrix testified that neither Fowler nor his friends were armed.  *Id.*  Fowler entered his apartment while his friends stayed in the hallway.  *Id.*  Miller and petitioner drew their guns, and Miller fired at Fowler.  *Id.*  Fowler and his friends fled, with Miller and petitioner in pursuit and still firing.  *Id.*  Casiel heard six or seven additional shots.  *Id.*  Fowler was holding onto Casiel but collapsed near the doorway of the building.  *Id.*

¶ 6      Miller continued the chase, firing at Casiel and the others, and striking Casiel.  *Id.* ¶ 6.  Chicago police officer Ephgrave saw Miller shooting and petitioner running behind Miller with a gun in hand.  Officer Ephgrave did not see Casiel holding a gun, and did not see a gun near

Fowler's body. *Id.* Miller and petitioner fled but were arrested at the scene. *Id.* Officer Ephgrave saw each drop or try to "ditch" a gun. *Id.* The parties stipulated that a bullet recovered from a wall of the apartment was fired from Miller's gun, and two bullets removed from Fowler's body were fired from petitioner's gun. Fowler's autopsy revealed five gunshot wounds.

¶ 7 Petitioner testified that his inculpatory videotaped statement was the result of the police physically abusing him and telling him what to say. Petitioner added that he shot at the three men who returned with Fowler (Casiel, Hendrix, and Fox) because he heard five shots after they threatened him and Miller walked toward them.

¶ 8 The court found petitioner guilty of first-degree murder and attempted murder, finding that he personally discharged a firearm that proximately caused death. He was sentenced to 47 years' imprisonment for murder, including a 25-year firearm enhancement, consecutive to 6-year terms for the other two offenses. Codefendant Miller was also convicted of first-degree murder and attempted murder, and sentenced to 47 and 6 years' imprisonment, respectively.

¶ 9 On direct appeal, petitioner contended the circuit court erred in allowing the State to admit testimony that petitioner had threatened Fowler. We affirmed. *Eastling*, No. 1-04-2692. In 2008, petitioner filed a *pro se* postconviction petition arguing in part that his conviction was based upon perjured testimony, which prevented him from raising a provocation defense to obtain a second-degree murder conviction. The circuit court summarily dismissed the petition, and we granted petitioner's motion for leave to withdraw his appeal. *Eastling*, No. 1-08-2338 (2010).

¶ 10    On June 12, 2018,[1] petitioner sought leave to file a successive postconviction petition. Petitioner contended that his 53-year aggregate sentence was an unconstitutional *de facto* life sentence pursuant to the holdings in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny.[2] Petitioner noted that he was sentenced as an 18-year-old young adult and argued that new research in neurobiology and developmental psychology "proves" that brain development as the time of the offense was "closer to adolescents than it was to an adult." He then concluded that, since a young adult's brain is not more developed than a juvenile's, he was entitled to "*Miller* [*v. Alabama-*]type protection," and his sentence violated both (1) the proportionate penalties clause of the Illinois constitution as applied to him and (2) the Eighth Amendment of the federal constitution.

¶ 11    Petitioner added that he showed cause for his failure to raise this claim in his initial petition and prejudice resulting from this failure. As to cause, petitioner argued that the newly discovered evidence in "neuroscience" as well the decisions such as *People v. House*, 2015 IL App (1st) 110580, *People v. Nieto*, 2016 IL App (1st) 121604, and *People v. Gipson*, 2015 IL App (1st) 122451, arose after the filing of his initial petition. Petitioner argued that he suffered prejudice because his 53-year sentence was unconstitutional in light of this new evidence and case law.

¶ 12    On April 5, 2019, the circuit court entered a written order denying petitioner's motion for leave to file his successive postconviction petition. The court found that, with respect to his Eighth Amendment claim, petitioner failed to show "how he would develop the necessary factual record" because his petition contained no new facts to support his assertion that his brain development was

---

[1]    The date on the "Notice of Filing" for petitioner's motion to file a successive petition was not filled in. The motion bears a "received" stamp from the circuit clerk that is dated June 11, 2018, and it was stamped "filed" on June 12.

[2]    Petitioner further challenged the constitutionality of "the statute that allowed the [circuit court] to charge, convict[,] and sentence the petitioner as a[n] adult," but he has abandoned that claim on appeal.

similar to a juvenile's. The court further found that, even if petitioner demonstrated that his brain was "similar to that of a juvenile," petitioner would not be entitled to relief under the proportionate penalties clause because petitioner "brought a gun with him to see the mother of his child and personally fired two of the shots that killed the victim." This appeal follows.

¶ 13                                   ANALYSIS

¶ 14    Petitioner contends that the circuit court erred in denying his motion for leave to file a successive postconviction petition. Petitioner argues that, although he was a young adult at the time of the offense, he should be allowed to develop a record in the court below to show that juvenile sentencing provisions should also apply to him. Petitioner further claims that, at sentencing, the court did not adequately consider his youth and the attendant circumstances of youth. Petitioner asserts that his motion met the cause-and-prejudice test for obtaining leave to file a successive postconviction petition, and he asks that we reverse the court's denial and remand this cause for further postconviction proceedings.

¶ 15    The Act allows a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). Principles of *res judicata* and waiver will limit the range of issues available to a postconviction petitioner " 'to constitutional matters which have not been, and could not have been, previously adjudicated.' " *People v. Scott*, 194 Ill. 2d 268, 273-74 (2000) (quoting *People v. Winsett*, 153 Ill. 2d 335, 346 (1992)). Accordingly, rulings on issues that were previously raised at trial or on direct appeal are *res judicata,* and issues that could have been raised in the earlier proceedings, but were not, will ordinarily be deemed waived. *Id.* at 274; 725 ILCS 5/122-3 (West 2016).

¶ 16    Moreover, the Act provides that only one petition may be filed by a petitioner without leave of court. 725 ILCS 5/122-1(f) (West 2016). As a result, successive postconviction petitions are "highly disfavored." *People v. Bailey*, 2017 IL 121450, ¶ 39. The granting of leave to file a successive petition is defined in terms of the cause-and-prejudice test, where cause is defined as some objective factor external to the defense that impeded efforts to raise the claim in an earlier proceeding, and prejudice occurs where the alleged error "so infected" the trial that the resulting conviction or sentence violates due process. *Id.* ¶ 14 (quoting 725 ILCS 5/122-1(f) (West 2014)).

¶ 17    To meet the cause-and-prejudice test for a successive petition, a petitioner must " 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *People v. Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)). Both elements of the cause-and-prejudice test must be met for the petitioner to prevail. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). The cause-and-prejudice test is a "more exacting standard" than the " 'gist' standard" under which initial postconviction petitions are reviewed. *People v. Conick*, 232 Ill. 2d 132, 142 (2008). We review *de novo* the circuit court's denial of leave to file a successive petition. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 32.

¶ 18    Petitioner first contends that *Miller*, which held that the Eighth Amendment prohibited mandatory life sentences for offenders under the age of 18, should nonetheless extend to young adult offenders such as himself. Petitioner argues that the circuit court should not have imposed a 53-year "*de facto* life term [of imprisonment]" on him without considering his "youth and the attendant circumstances of youth."

¶ 19    Petitioner's claim is unavailing. *Miller* explicitly held that the Eighth Amendment only prohibits "mandatory life without parole *for those under the age of 18*" at the time of their crimes. (Emphasis added.) *Miller*, 567 U.S. at 465. Our supreme court later observed that, when the

6

United States Supreme Court held that 18 would be the age to differentiate between juvenile and adult offenders, it was not "based primarily on scientific research" and merely coincided with the point where society determines adulthood and childhood for many other purposes. *People v. Harris*, 2018 IL 121932, ¶ 60 (citing *Roper v. Simmons*, 543 U.S. 551, 574 (2005)). The *Harris* court further noted that new research findings still did not alter that "traditional line." *Id.* The court then expressed agreement with those courts that had repeatedly rejected this claim and held that the age of 18 still marked the line between juveniles and adults for sentencing purposes. *Id.* ¶ 61. Petitioner's apparent wish to redraw that line is a task for the legislature. See generally, *People v. Buffer*, 2019 IL 122327, ¶¶ 34-35.

¶ 20 Petitioner next contends that his sentence violates the proportionate penalties clause of the Illinois constitution. This clause provides in relevant part that "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (citing *People v. Moss,* 206 Ill. 2d 503, 522 (2003)). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and "the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 21 Petitioner argues that his sentence shocks the moral conscience of the community because of petitioner's background and recent studies on adolescent brain development. Petitioner also argues that, pursuant to our supreme court's holding in *Harris*, his petition must advance for further proceedings. Petitioner also relies upon numerous decisions from this court in support of his claim, including *People v. House*, 2019 IL App (1st) 110580-B; *People v. Minniefield*, 2020 IL App (1st)

170541; *People v. Carrasquillo*, 2020 IL App (1st) 180534; *People v. Ruiz*, 2020 IL App (1st) 163145; and *People v. Johnson*, 2020 IL App (1st) 171362.

¶ 22    In *Harris*, the 18-year-old defendant argued on direct appeal that his 76-year sentence shocked the moral sense of the community given the facts of his case, his youth, and other mitigating circumstances.  *Harris*, 2018 IL 121932, ¶ 36.  The court, however, noted that there was no evidentiary hearing or factual development in the trial court to support his claim.  *Id.* ¶ 46.  The court thus held that the record was insufficiently developed to address his contention that *Miller* applied to his proportionate penalties claim.  *Id. ¶* 48.  Nonetheless, the *Harris* court observed that the defendant could potentially raise the claim in a postconviction petition.  *Id.*

¶ 23    Petitioner argues that he should have the opportunity to develop the record to determine whether the protections of *Miller* can apply to an 18-year-old offender.  Successive postconviction petitions, however, are "highly disfavored" (*Bailey*, 2017 IL 121450, ¶ 39) and meeting the cause-and-prejudice test is "more exacting standard" than the test for surviving the first stage of an initial postconviction petition (*Conick*, 232 Ill. 2d at 142).  In addition, a petitioner must submit enough documentation to allow a circuit court to determine whether the cause-and-prejudice test has been met.  *Smith*, 2014 IL 115946, ¶ 35 (quoting *Tidwell*, 236 Ill. 2d at 161).  The *Harris* court did not specify the requirements to meet the cause-and-prejudice test.

¶ 24    Here, there is nothing to indicate how petitioner's own immaturity or individual circumstances would provide a compelling reason to allow him to file a successive postconviction petition; instead, his motion merely relies upon articles from various periodicals containing general assertions that immaturity and brain development commonly associated with juveniles can also extend into young adulthood.  Petitioner's recitation of various studies regarding the evolving science of juvenile maturity and development is insufficient to survive the more exacting standard

that would warrant the filing of a successive postconviction petition. *People v. Holman*, 2017 IL 120655, ¶¶ 30 (citing *People v. Thompson*, 2015 IL 118151); *cf. Johnson*, 2020 IL App (1st) 171362, ¶¶ 29-31 (holding that the petitioner's claim warranted further proceedings where he submitted an affidavit supporting his claim that, although he was a young adult, his brain was lacked mature development). Since petitioner failed to show prejudice under the cause-and-prejudice test, the circuit court did not err in denying his motion.

¶ 25 Relying upon *Minniefield*, *Carrasquillo*, and *Ruiz*, petitioner asserts that, although he provided only general information regarding young adult brain development, he should nonetheless be allowed leave to file his petition "so that he can develop a factual record to support his assertion that his brain 'was no more developed than a juvenile brain.' " We disagree.

¶ 26 *Minniefield* and *Carrasquillo* suggest that a young adult's mere assertion of substandard brain development *ipso facto* entitled the petitioners in those cases to leave to file their petition. *Minniefield*, 2020 IL App (1st) 170541, ¶ 44; *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109. In particular, the *Carrasquillo* court held, "[The defendant] has shown prejudice by establishing a 'catch-22'—without a developed record, he cannot show his constitutional claim has merit, and without a meritful [*sic*] claim, he cannot proceed to develop a record." [Footnote omitted.] *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109. The author of the *Carrasquillo* opinion reiterated that the holding in *Minniefield*, 2020 IL App (1st) 170541, ¶ 44 (quoting *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109).

¶ 27 Similarly, in *People v. Ruiz*, 2020 IL App (1st) 163145, the court held that the petitioner stated "a claim that, as a matter of law, prejudice has been caused by reason of [his] justified failure to raise a constitutional challenge to his sentence in his initial postconviction petition." *Id.* ¶ 53. The court explained the "nature" of the prejudice that the petitioner established: "By failing to

raise the claim in his initial postconviction petition, [petitioner] was deprived of an opportunity to make a *Miller* argument at all due to his status as an adult at the time of the offense." *Id.*

¶ 28      We find these cases unpersuasive because they seem to conflict with controlling precedent requiring that, to obtain leave to file a successive petition, a petitioner provide some evidence or documentation demonstrating that *the petitioner's* brain development was delayed.[3]  See, *e.g.*, *Smith*, 2014 IL 115946, ¶ 35 (documentation required to allow circuit court to determine whether the cause-and-prejudice test met); *Conick*, 232 Ill. 2d at 142 (meeting the cause-and-prejudice test is a more exacting standard than the test to survive summary dismissal at the first stage of an initial postconviction petition).  Although petitioner here seeks to "develop" a factual record to support his claim, this presupposes the existence of *some factual basis specific to petitioner*.  Our reading of controlling precedent is that, although a petitioner's factual record need not be *fully* developed merely to obtain leave to file the petition, there must be some threshold amount of evidence that would warrant the filing of the successive petition and then the subsequent factual development of the proferred evidence.  Petitioner here, however, has provided only general studies that the typical young adult's brain (but not necessarily his) is not much more developed than a typical juvenile's.

¶ 29      Finally, petitioner's reliance upon *People v. House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Jan. 29, 2020), is unavailing.  In that case, another division of this court held that the defendant's mandatory life sentence (following a conviction for murder by accountability) violated the proportionate penalties clause, where the defendant was 19 years old at the time of the

---

[3]  In addition, *Ruiz* appears to hold that prejudice is shown "as a matter of law" if cause has been met, which we believe also conflicts with controlling precedent.  See, *e.g.*, 725 ILCS 5/122-1(f) (West 2018); *Smith*, 2014 IL 115946, ¶ 34 (holding that a petitioner's *pro se* motion for leave to file a successive postconviction petition meets the cause and prejudice requirement of section 122-1(f) if the motion adequately alleges *facts* demonstrating cause *and* prejudice).

offense, had no prior violent criminal history, and was minimally culpable since he acted solely as a lookout. *House*, 2019 IL App (1st) 110580-B, ¶¶ 46, 64. Moreover, the *House* court stated that the defendant's 1993 conviction under an accountability theory "weighed heavily in our conclusion that his mandatory natural life sentence shocked the moral conscience of the community." *Id.* ¶ 32. The court further noted that, although the defendant received a mandatory natural life sentence, the 17-year-old codefendant, who "either fired the gun at the victims or struck them with the gun," was sentenced to 44 years' imprisonment with day-for-day good conduct credit and released in April 2018. *Id.* ¶¶ 35-36.

¶ 30    Here, petitioner was not convicted merely based upon accountability:  he was one of two active shooters, and witness testimony established that, after the initial round of shooting and the victim's flight from the scene, petitioner continued to chase the victim and his associates while firing at him. Fleeing witnesses heard six or seven shots, and the murdered victim was riddled with five gunshot wounds, two of which were from petitioner's gun. Petitioner's 47-year sentence for first-degree murder comprised a 22-year sentence, which was near the minimum term of 20 years plus the mandatory 25-year-to-life firearm add-on. 730 ILCS 5/5-8-1(a)(1)(a) (West 2000) (sentencing range of 20 to 60 years); 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000) (mandatory firearm add-on of 25 years to natural life). In addition, his six-year sentence for attempted murder was the minimum permissible sentence. See 720 ILCS 5/8-4 (West 2000); 730 ILCS 5/5-8-1(a)(3) (West 2000). Finally, codefendant Miller received the same sentence for his convictions for first-degree murder and aggravated battery. On these facts, *House* is distinguishable, and we cannot hold that petitioner's sentence shocks the moral sense of the community.

¶ 31                                            CONCLUSION

¶ 32     The circuit court did not err in denying petitioner's motion for leave to file a successive postconviction petition because his 53-year sentence, which was imposed when petitioner was 18 years old, is not an unconstitutional *de facto* life sentence.  Accordingly, we affirm the judgment of the circuit court.

¶ 33     Affirmed.