2025 IL App (1st) 230631-U

No. 1-23-0631

Order filed March 6, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 24954 (01) |
| | ) | |
| JOSEPH EASTLING, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OCASIO delivered the judgment of the court.
Justices Hoffman and Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*: Circuit court's order denying defendant leave to file a second successive postconviction petition is affirmed where defendant did not raise a claim of actual innocence based on newly discovered evidence.

¶ 2     Defendant Joseph Eastling appeals from an order of the circuit court denying him leave to file a second successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He contends that the court erred in denying him leave to file because he stated a claim of actual innocence based on newly discovered evidence. We affirm.

¶ 3    Following a 2004 bench trial, Eastling was convicted of first degree murder and attempted first degree murder and sentenced to consecutive prison terms of 47 years and 6 years, respectively. We affirmed on direct appeal. *People v. Eastling*, No. 1-04-2692 (2006) (unpublished order under Supreme Court Rule 23).

¶ 4    Eastling and Flynard Miller were charged with the first degree murder of Charles Fowler by personally discharging a firearm, and the attempted murder and aggravated battery with a firearm of Michael Casiel, on or about September 16, 2000.[1] Eastling raised the affirmative defense of self-defense before and during trial.

¶ 5    Eastling and Molina Matthews, Fowler's fiancée and the mother of Eastling's son Demiyon, both testified that the incident began when Miller and Fowler bumped shoulders in the apartment Fowler shared with Matthews. There had been no hostility between Eastling and Fowler.

¶ 6    Matthews, Casiel, and Anthony Hendrix testified that, after Miller and Fowler bumped shoulders, Fowler left his apartment but returned with friends Casiel, Hendrix, and Michael Fox to remove Eastling and Miller from Fowler's apartment. While Fowler was gone, Eastling showed Matthews that he and Miller were carrying firearms. Neither Fowler nor his friends were visibly armed. Fowler entered his apartment with his hands empty while his friends stayed in the hallway. Fowler uttered a greeting and asked if Eastling and Miller were leaving, and Miller drew his weapon and fired multiple shots at Fowler. Fowler and his friends fled, with Eastling and Miller in pursuit. Fowler collapsed near the building doorway. Miller continued the chase and fired his weapon, striking Casiel in the leg.

---

[1] Eastling and Miller were tried separately. Miller is not a party to this appeal.

¶ 7    The parties stipulated that Matthews testified at Miller's trial that Eastling ran from the apartment holding a firearm.

¶ 8    Police officer George Ephgrave saw Eastling and Miller pursuing Casiel with firearms in hand. Miller fired at Casiel, who was not holding a firearm. Eastling was about 30 feet, or two seconds, behind Miller. Two firearms were recovered when Eastling and Miller were arrested. Ephgrave did not see a firearm on Fowler's body.

¶ 9    Forensic testing showed that a bullet recovered from the apartment wall was fired from Miller's firearm and two bullets recovered from Fowler's body were fired from Eastling's firearm.

¶ 10   Renee Daniels, Matthews's mother, testified that, after a March 2000 argument, Eastling threatened to kill Matthews and Fowler if Matthews did not keep Fowler away from Demiyon. Daniels admitted that Eastling and Fowler seemed to get along, and she did not mention the threat to anyone until after the September 2000 incident.

¶ 11   Police detective Greg Swiderek testified that Eastling gave a statement, after being confronted with the forensic evidence, that Miller fired a shot at Fowler and Eastling fired three shots towards the doorway.

¶ 12   Eastling testified that Fowler returned to his apartment angry and confronted Miller. Fowler's friends entered the apartment and verbally threatened Eastling and Miller. Eastling heard multiple gunshots and fired at Fowler's friends. Eastling agreed that he "never saw Charles Fowler armed at any time." Fowler and his friends fled, Miller chased them, and Eastling followed a few seconds later. Eastling denied firing any more shots. Outside, Eastling saw Fowler lying wounded and Miller fleeing. Eastling ran but was stopped by police. Eastling testified that police denied his requests for a telephone call, physically abused him, and told him what to say in his statement. Eastling denied making the threat described by Daniels.

¶ 13    The court found Eastling guilty of first degree murder, attempted murder, and aggravated battery with a firearm, merging the count for aggravated battery into the count for attempted murder. The court found "no reasonable belief of self-defense" and "no serious provocation," so second degree murder was inapplicable. The court sentenced Eastling to consecutive prison terms of 47 years for murder, including a firearm enhancement, and 6 years for attempted murder. Miller was convicted of the same offenses in his trial and received the same sentence.

¶ 14    On direct appeal, Eastling contended that the trial court erred in admitting Daniels's testimony about his threat. See *Eastling*, No. 1-04-2692, at 1. We affirmed. *Id.*

¶ 15    In 2008, Eastling filed a *pro se* postconviction petition, claiming that Matthews and Casiel gave perjured testimony that Fowler was unarmed and did not provoke the incident, and that Eastling could have established provocation for second degree murder had there been evidence that Fowler was armed. While the petition claimed that Matthews and Casiel recanted their trial testimony, that assertion was not supported by an affidavit from Matthews or Casiel. The circuit court summarily dismissed the petition, and we dismissed Eastling's appeal upon his motion. *People v. Eastling*, No. 1-08-2338 (Feb. 18, 2010) (dispositional order).

¶ 16    In 2018, Eastling filed a motion for leave to file a successive petition under the Act, challenging his sentence in light of his age at the time of the offenses. The circuit court denied Eastling leave to file, and we affirmed. *People v. Eastling*, 2020 IL App (1st) 191206-U, ¶¶ 2, 10-14, 32.

¶ 17    In August 2021, Eastling filed the *pro se* motion for leave to file a second successive postconviction petition now at issue. Counsel appeared for Eastling and, in October 2022, filed a supplemental motion for leave to file an amended successive petition. In relevant part, Eastling claimed actual innocence where he argued self-defense at trial and maintained the supporting

affidavits would show he acted in self-defense as Fowler was armed and was the initial aggressor. The petition was supported by the affidavits of Eastling, Matthews, Fox, Miller, Demiyon, and Kendrick Butler.

¶ 18    Eastling averred that he was unaware of any disputes between Miller and Fowler and, had he known, he would not have brought Miller to the apartment on the day in question. According to Eastling, the rear door of the apartment was kept locked so Fowler and his friends were standing in the only other exit.

¶ 19    Matthews averred that Fowler held a firearm as he approached Miller, and one of Fowler's friends verbally threatened Eastling and Miller just before Miller fired.

¶ 20    Fox averred that Fowler "pulled out his handgun" as he approached Miller, Fox verbally threatened Eastling and Miller just before Miller fired, and Fowler dropped a firearm as he fell, which Casiel retrieved before continuing to flee and then hid after he was shot in the leg.

¶ 21    Miller averred that Eastling was unaware of Miller's "beef" with Fowler, and Miller shot Fowler when Miller saw Fowler "had a gun."

¶ 22    Demiyon averred that he was born in 1998 and described the circumstances of obtaining the affidavits of Matthews and Fox.

¶ 23    Butler averred that he was in the neighborhood to buy marijuana when he saw a man exit the apartment building in question and return a short time later with three other men, all of whom seemed angry. He then saw the four men running from the building. One man fell and dropped a firearm, which one of the others retrieved. A fifth man shot at the man who retrieved the firearm, then Eastling "came running out." Butler saw the man who retrieved the firearm hide it, and Butler returned later, found the weapon, and sold it.

¶ 24 On March 16, 2023, the circuit court denied Eastling leave to file the second successive petition. In a written order, the court found that Eastling's actual innocence claim was not based on newly discovered or conclusive evidence. The evidence was not newly discovered because Eastling could have presented it in his earlier postconviction petitions where (1) Matthews, Fox, and Miller were known witnesses; (2) Butler's affidavit gave essentially the same account as the affidavit of another individual, Willie Wells, that was attached to Miller's 2013 postconviction petition; and (3) Demiyon's affidavit only concerned obtaining the affidavits of Matthews and Fox.

¶ 25 As to the evidence not being conclusive, the court noted that Matthews's affidavit contradicted her affidavit attached to Miller's 2011 postconviction petition, which did not describe Fowler holding a firearm. Further, the affidavit from Miller that Eastling attached to the instant petition did not establish that Fowler drew a firearm or presented a threat nor did it overcome the fact that Eastling and Miller pursued Fowler and his friends. Finally, the court noted that "Fox and Matthews' affidavits offer no basis to conclude that [Eastling] and Miller were protecting themselves when they chased the retreating group down and continued to shoot at the fleeing group." The court noted that self-defense is unavailable when an initial aggressor retreats and the defendant becomes the aggressor by pursuing the initial aggressor.

¶ 26 In finding the affidavits were not newly discovered or conclusive, the circuit court referenced that Miller had also filed a postconviction petition and motions for leave to file successive postconviction petitions that were supported by an affidavit from Matthews. To the extent necessary, we will discuss our rulings affirming the denial of Miller's 2011 and 2013 motions for leave to file successive petitions. See *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010) (we may take judicial notice of proceedings in other cases).

¶ 27    Miller's 2011 motion for leave to file a successive postconviction petition claiming actual innocence was supported by Matthews's affidavit "that, when Fowler entered the apartment 'with his hands to his side down towards the rear of his thigh,' defendant drew a gun, and Matthews immediately took cover with her son before she heard gunshots." See *People v. Miller*, 2016 IL App (1st) 141101-U, ¶ 9 (affirming denial of leave to file second successive petition).

¶ 28    Miller's 2013 motion for leave to file a successive petition also claimed actual innocence, supported by the affidavit of Willie Wells. *Id.* ¶¶ 11-12. Wells was near Fowler's apartment building buying marijuana when four or five men walked by, looking angry. *Id.* ¶ 12. A short time later, the same men ran past Wells. *Id.* One was "slumped over the other" and had a firearm in hand, which fell to the ground when he fell. The man who had been supporting him retrieved the firearm and continued fleeing. *Id.* The circuit court "found Wells's affidavit to be *** not material in that Wells did not see what occurred inside the apartment nor did he identify the person who dropped the gun, and was unlikely to change the outcome." *Id.* ¶ 13. We agreed, explaining:

> "Matthews, Casiel, and Hendrix testified to not seeing Fowler armed, and Matthews's affidavit for the second post-conviction proceeding also does not place a gun visibly in Fowler's possession. Wells's account that Fowler dropped a gun in his flight *** does not directly address whether Fowler showed—or even had—a gun while in his apartment. Moreover, against Wells's account, we have Officer Ephgrave's testimony that he *** never saw Casiel holding a gun. Lastly, even if Fowler showed a gun in his waistband to armed men in his apartment while in the process of asking the men to leave, that would not remotely justify defendant's actions of immediately drawing and firing his gun in Fowler's apartment—without Fowler having drawn his gun—and then pursuing four men into the street firing more shots." *Id.* ¶ 18.

¶ 29    On appeal, Eastling contends that the circuit court erred in denying him leave to file a successive postconviction petition presenting newly-discovered evidence of actual innocence. Specifically, he claims that his self-defense theory is supported by affidavits showing that Fowler brandished a firearm prior to the shooting.

¶ 30    Generally, a defendant may file only one postconviction petition under the Act without leave of court, which may be granted if the defendant shows an objective cause for not previously raising the claims of the proposed petition and prejudice from not raising them. 725 ILCS 5/122-1(f) (West 2020). Another basis for granting leave to file a successive petition is that the proposed petition raises a claim of actual innocence. *People v. Harris*, 2024 IL 129753, ¶ 42. Well-pled factual allegations in a postconviction petition and supporting documentation must be taken as true unless positively rebutted by the record. *Id.* ¶ 58. Our review of the denial of leave to file a successive petition is *de novo*. *Id.* ¶ 44.

¶ 31    For a claim of actual innocence, a defendant must present new, material, non-cumulative evidence that is so conclusive it would probably change the result in a retrial. *Id.* ¶ 63. Evidence is (1) new if it was discovered after trial and could not have been discovered earlier by exercising due diligence, (2) material if it is relevant and probative of the defendant's innocence, (3) and non-cumulative if it adds to the evidence heard at trial. *People v. Griffin*, 2024 IL 128587, ¶ 35. To be conclusive, a defendant's new evidence must raise the probability that it is more likely than not that no reasonable trier of fact would find him guilty beyond a reasonable doubt. *Harris*, 2024 IL 129753, ¶ 43. The new evidence must place the trial evidence in a different light and undermine the court's confidence in the factual correctness of the guilty verdict. *Id.* ¶ 65. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Id*.

¶ 32    Here, Eastling claims that his proposed petition presented newly discovered evidence of actual innocence because the affidavits show that Fowler brandished a firearm before Eastling fired, which supports that Eastling fired in self-defense.

¶ 33    After reviewing the record, we find the court did not err in denying Eastling leave to file the second successive petition where his claim of actual innocence was not based on newly discovered evidence of a conclusive character. Most importantly, as noted by the court in denying leave, the affidavits at issue are not conclusive because they neither place the trial evidence in a new light nor undermine our confidence in the verdict. *Harris*, 2024 IL 129753, ¶ 65.

¶ 34    Similarly to Miller's cases, the key concern in this case is what happened before Eastling and Miller fired their weapons. Eastling's evidence that Fowler dropped a firearm as he fled *after* Eastling and Miller fired does not address what occurred *before* Eastling fired. Eastling testified that he did not see Fowler holding a firearm, and his affidavit in support of the postconviction filing at issue does not change that. Crucially, Eastling could not feel that his life was threatened by a weapon he did not know to exist. He now presents affidavits from others to the effect that Fowler had a firearm or "pulled out his handgun." Accepting *arguendo* that Fowler had a firearm in hand in the apartment, however, Eastling has not presented evidence that he knew Fowler had the weapon before Eastling and Miller fired at him. That aside, Eastling also presented no evidence that Fowler brandished or pointed a firearm at anyone. In other words, as this court stated in one of Miller's appeals, Fowler visibly possessing a firearm would not justify Eastling and Miller's actions. *Miller*, 2016 IL App (1st) 141101-U, ¶ 18.

¶ 35    Positing a trial with the existing trial evidence and the affiants testifying consistently with their affidavits, we do not find it more likely than not that a reasonable trier of fact would not have found Eastling guilty beyond a reasonable doubt. *Harris*, 2024 IL 129753, ¶ 43. As the evidence

at issue was not so conclusive it would probably change the result in a retrial, Eastling failed to raise a valid claim of actual innocence, and the circuit court did not err in denying leave to file his second successive petition.

¶ 36 Accordingly, the judgment of the circuit court is affirmed.

¶ 37 Affirmed.